# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3760

_____

United States of America,     *
              *
   Plaintiff - Appellee,    *
              * Appeal from the United States
 v.            * District Court for the
              * Eastern District of Arkansas.
Cheryl Moten,       *
              *
   Defendant - Appellant.  *

_____

Submitted: June 10, 2008
Filed: December 24, 2008

_____

Before LOKEN, Chief Judge, EBEL[*] and COLLOTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Cheryl Moten appeals her conviction and twenty-seven month sentence for aiding and abetting the theft of public funds in violation of 18 U.S.C. §§ 2 and 641. Moten argues: (1) the conviction violated her Fifth Amendment privilege against self incrimination because the government failed to prove that it did not use statements she was compelled to give during an internal investigation by her employer, the State of Arkansas; (2) her advisory guidelines sentencing range should not be enhanced for abuse of a position of public or private trust; and (3) she should not be jointly and

_____

[*]The HONORABLE DAVID M. EBEL, United States Circuit Judge for the Tenth Circuit, sitting by designation.

severally liable with two co-defendants for restitution of the money she helped them steal. We affirm.

## I.

At the time in question, Moten served as manager of the Juvenile Justice and Delinquency Prevention division of the Arkansas Department of Human Services, Division of Youth Services (DYS), which administered grant programs funded by the United States Department of Justice. Her responsibilities included serving as liaison between DYS and the Arkansas Coalition for Juvenile Justice, an advisory board; processing grant paperwork; and managing federal funds awarded to the State. She was not authorized to approve grants or to increase grant amounts.

In September 2002, at Moten's request, the Coalition approved a one-time payment of $5460 for a youth football program known as Little Angels. The program's founder, Theo Dickerson, used the DYS funds to purchase football and cheerleading equipment. Over the next several months, Moten caused DYS to pay Little Angels an additional $120,000 that was neither approved by the Coalition nor supported by a valid grant award. Dickerson applied a portion of these funds to his personal expenses and gave $21,500 to Larry Williams, an assistant coach and friend of Moten. Like Dickerson, Williams spent grant money on personal expenses.

The unauthorized payments were eventually investigated by Gary Staggs of the DYS Internal Affairs department. Following Staggs's investigation, DYS conducted a two-day disciplinary hearing at which Moten was questioned about her role in obtaining the Little Angels payments. She denied wrongdoing, insisting that her superior, Barbara Marsac, had instructed Moten to increase the amounts granted to the football program, a claim Marsac denied. At the end of the hearing, DYS terminated Moten. Marsac was subsequently forced to retire. DYS then referred the matter to the Arkansas State Police, who in turn referred it to the FBI. During the FBI

investigation, Dickerson and Williams submitted false receipts to cover up their personal use of the government funds. They were indicted along with Moten, pleaded guilty, and testified for the prosecution at Moten's trial.

## II.

The Fifth Amendment privilege against self-incrimination extends to statements a government employee is compelled to make under the threat of removal from public office. See Garrity v. New Jersey, 385 U.S. 493, 500 (1967). The privilege does not bar the government from compelling a public official to answer. "Rather, the Constitution is violated only when the compelled statement, or the fruit of that statement, is used against the officer in a subsequent criminal proceeding." In re Grand Jury Subpoenas Dated Dec. 7 & 8, 40 F.3d 1096, 1102 (10th Cir. 1994), cert. denied, 514 U.S. 1107 (1995). Therefore, if a criminal defendant such as Moten demonstrates that she was compelled to testify by her government employer, "the government must show that any evidence used or derived has a 'legitimate source wholly independent of the compelled testimony.'" United States v. McGuire, 45 F.3d 1177, 1182 (8th Cir.), cert. denied, 515 U.S. 1132 (1995), quoting Kastigar v. United States, 406 U.S. 441, 460 (1972).

In the district court, Moten moved to dismiss the indictment or to suppress any evidence obtained by reason of her statements at the DYS disciplinary hearing. The district court[1] held a "Kastigar hearing" to determine whether the statements were compelled and, if so, whether the government's evidence was derived from sources independent of those statements. The court found that the statements were compelled, but also found that the government established by a preponderance of the evidence (i) that the information obtained during the FBI investigation was derived from

---

[1]The HONORABLE JAMES M. MOODY, United States District Judge for the Eastern District of Arkansas.

independent sources, and (ii) that no testimony by the government's witnesses was tainted by use of Moten's compelled statements. On appeal, Moten argues that the government failed to carry its burden of proving that its evidence was not derived from use of her compelled statements. We review the district court's contrary findings for clear error. McGuire, 45 F.3d at 1183.

Investigator Staggs, who attended the disciplinary hearing, testified that he completed his investigation before hearing Moten's statements and did not investigate further after the disciplinary hearing. His trial testimony was limited to the pre-hearing investigation. Moten's supervisor, Elbert Grimes, also attended the disciplinary hearing. His trial testimony was limited to first-hand knowledge of the internal structure of DYS, the grant process, and Moten's role as unit manager in preparing documents authorizing payments to Little Angels that Grimes and his superior, Marsac, then approved. Marsac, who did not attend the disciplinary hearing, also testified that Moten prepared documents authorizing the improper payments; she denied instructing Moten to do so. In addition to this testimony by present and former DYS employees, two FBI agents testified that their investigation was conducted without use of Moten's statements from the disciplinary hearing, and the Assistant United States Attorney represented that she did not read Moten's statements in presenting the case to the grand jury and in preparing for trial. Based on our careful review of the testimony at the Kastigar hearing and the evidence presented at trial, we conclude the district court did not clearly err in finding that the government's evidence was derived from legitimate sources wholly independent of the largely exculpatory statements made by Moten at the disciplinary hearing. See United States v. Garrett, 849 F.2d 1141, 1142 (8th Cir. 1988).

### III.

Moten next argues that the district court clearly erred in applying a two-level enhancement because she "abused a position of public or private trust . . . in a manner

that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The term "public or private trust" refers to "a position characterized by professional or managerial discretion, whereby the offender is subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." United States v. Erhart, 415 F.3d 965, 972 (8th Cir. 2005), cert. denied, 546 U.S. 1156 (2006); see U.S.S.G. § 3B1.3 cmt. n.1. Moten argues that her position was not one of public trust because she had no authority to award or to increase DYS grants. However, numerous DYS employees, including Moten's supervisors, testified that she was a long-time, trusted employee who was responsible -- with little if any supervision -- for reviewing invoices from grantees and creating purchase orders authorizing the payment of DYS funds. Her abuse of that position of trust made possible an offense that was repeatedly committed over a significant period of time. There was no clear error in imposing the § 3B1.3 enhancement. See United States v. Fazio, 487 F.3d 646, 659 (8th Cir.), cert. denied, 128 S. Ct. 523 (2007); United States v. Barrett, 178 F.3d 643, 646-47 (2d Cir. 1999).

## IV.

Finally, Moten argues that the district court abused its discretion by making her jointly and severally liable with co-defendants Dickerson and Williams to pay restitution to the victim of their theft of public funds. The Mandatory Victims Restitution Act of 1996 applied to this offense, see 18 U.S.C. § 3663A(c)(1), and required that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court." § 3664(f)(1)(A). It is undisputed that the victim was the Arkansas Department of Human Services and that the full amount of its loss was $120,000.00. The statute further provides that, if the court finds more than one defendant responsible for a victim's loss, "the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." § 3664(h).

-5-

At sentencing, Moten's counsel conceded that she was responsible as an aider and abettor for the victim's loss but urged that she be made a restitution "guarantor" because Dickerson and Williams were the only ones to benefit from the stolen grant monies. The government urged that Moten be jointly and severally liable for the full amount of the victim's loss. The district court entered judgment making Moten jointly and severally liable for Dickerson's restitution obligation of $98,500 and for Williams's restitution obligation of $21,500, and establishing a payment schedule tailored to her likely ability to pay. See 18 U.S.C. § 3664(f)(2).

On appeal, Moten argues she should only be a guarantor of her co-defendants' restitution liabilities because she received no personal benefit from the stolen funds. We disagree. Under § 3664(h), "co-defendants may be proportionally or jointly and severally liable for restitution when they are all culpable." United States v. Klein, 476 F.3d 111, 114 (2d Cir. 2007). The statute authorizes restitution "for all of the losses that [Moten] caused, not simply the losses that wound up in [her] own pocket." United States v. Hunt, 521 F.3d 636, 648 (6th Cir. 2008). Moten was personally responsible for causing the victim's entire loss, whether or not she received the benefit of the stolen funds. In the district court, she cited no authority for limiting restitution liability to that of a guarantor, nor did she explain how guarantor liability could be enforced in a non-burdensome manner that adequately protected the victim's right to full restitution. In these circumstances, there was no abuse of the district court's substantial discretion to fashion an appropriate restitution remedy. United States v. McGlothlin, 249 F.3d 783, 784 (8th Cir. 2001).

The judgment of the district court is affirmed.

_____