# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 7, 2011          Decided April 19, 2011

No. 11-3008

UNITED STATES OF AMERICA,
APPELLEE

v.

MICHAEL M. MONZEL,
APPELLEE

AMY,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-cr-00243)

———

No. 11-3009

IN RE: AMY, THE VICTIM IN THE MISTY CHILD PORNOGRAPHY
SERIES,
PETITIONER

———

On Petition for Writ of Mandamus

———

*Paul Cassell* argued the cause for and filed the petition for writ of mandamus for appellant/petitioner Amy. With him on the petition was *James R. Marsh*.

*Nicholas P. Coleman* argued the cause for and filed the response for appellee/respondent United States of America. *Roy W. McLeese III*, Assistant U.S. Attorney, entered an appearance.

*David W. Bos*, Assistant Federal Public Defender, argued the cause and filed the response for appellee/respondent Michael M. Monzel. With him on the response were *A.J. Kramer*, Federal Public Defender, and *Neil H. Jaffee*, Assistant Federal Public Defender.

Before: GINSBURG, ROGERS, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: In December 2009, respondent Michael Monzel pled guilty to possession of child pornography. One of the images he possessed depicted the petitioner, who proceeds in this matter under the pseudonym "Amy." Amy subsequently sought $3,263,758 in restitution from Monzel. The district court, however, awarded what it called "nominal" restitution of $5000, an amount it acknowledged was less than the harm Monzel caused her. Amy challenges the award in a petition for mandamus and by direct appeal. We grant her petition in part because the district court admitted the restitution award was smaller than the amount of harm she suffered as a result of Monzel's offense, and we dismiss her direct appeal because it is not authorized by statute.

3

I

A

This case involves the interplay of three statutes. 18 U.S.C. § 3771, also known as the Crime Victims' Rights Act (CVRA), grants crime victims "[t]he right to full and timely restitution as provided in law." *Id.* § 3771(a)(6). If a district court denies the relief sought, the Act provides that the victim or the government "may petition the court of appeals for a writ of mandamus." *Id.* § 3771(d)(3). The court of appeals is then required to "take up and decide such application forthwith within 72 hours after the petition has been filed." *Id.*

18 U.S.C. § 2259 governs restitution awards for victims of child sexual exploitation and directs courts to award "the full amount of the victim's losses," *id.* § 2259(b)(1), defined as costs incurred for medical services; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; attorneys' fees and other litigation costs; and "any other losses suffered by the victim as a proximate result of the offense," *id.* § 2259(b)(3). Neither the defendant's economic circumstances nor the victim's entitlement to compensation from another source may diminish the amount of the victim's award. *See id.* § 2259(b)(4)(B).

Finally, 18 U.S.C. § 3664 sets forth rules for issuing and enforcing restitution awards. As relevant here, the statute provides that "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." *Id.* § 3664(e). "The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense" rests with the government. *Id.*

4

B

On December 10, 2009, respondent Michael Monzel pled guilty to one count of distributing child pornography in violation of 18 U.S.C. § 2252(a)(2) and one count of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). The National Center for Missing and Exploited Children identified petitioner Amy as the minor depicted in one of the pornographic images Monzel possessed but did not distribute. Amy filed a victim impact statement seeking $3,263,758 in restitution from Monzel, an amount she claims reflects her total losses from the creation and distribution of pornographic images of her as a child—including images of her being sexually abused. Monzel argued that the district court should award Amy no more than $100 because the government had failed to show what portion of Amy's losses he had caused.

In an order entered on January 11, 2011, the district court awarded Amy $5000 in what it called "nominal" restitution. Even though the court had "no doubt" that this amount was "less than the actual harm" Monzel caused Amy, Restitution Order at 5, it declined to award more because neither the government nor Amy had submitted evidence "as to what losses were caused by Defendant's possession of [the victim's] images," *id.* at 3 (alteration in original) (quoting *United States v. Church*, 701 F. Supp. 2d 814, 832 (W.D. Va. 2010)) (internal quotation marks omitted). The court also declined to hold Monzel jointly and severally liable for the entirety of the harm Amy has suffered as a result of the distribution and possession of her image by others, given "the substantial logistical difficulties in tracking awards made and money actually recovered" from such persons. *Id.* at 5.

Amy now petitions for a writ of mandamus under 18 U.S.C. § 3771(d)(3) directing the district court to order Monzel to pay her $3,263,758 in restitution. She has also challenged the award in a direct appeal and moves to consolidate her mandamus petition with the appeal. The government moves to dismiss Amy's appeal on the ground that crime victims may not directly appeal restitution orders. We have jurisdiction over her mandamus petition under § 3771(d)(3) but dismiss her direct appeal because it is not authorized by statute.

## II

As a preliminary matter, Amy has filed a motion to waive the 72-hour statutory deadline for deciding her mandamus petition. Monzel and the government both oppose her motion on the ground that the time limit cannot be waived at the sole discretion of the crime victim. We think Monzel and the government are right: Amy may not unilaterally waive the statutory deadline, but the passing of that deadline does not defeat our jurisdiction to decide her petition.

Amy asserts that the CVRA gives a crime victim a personal, waivable right to a decision on a petition for mandamus within 72 hours, but nothing in the language of the statute supports that view. No such right is mentioned among the enumerated protections afforded to crime victims, *see* 18 U.S.C. § 3771(a),[1] and the Act directs that the court of

---

[1] The CVRA states that "[a] crime victim has the following rights":

    (1)  The right to be reasonably protected from the accused.

    (2)  The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.

appeals "shall" decide the petition within the time limit. As we have previously recognized, "'[s]hall' is a term of legal significance, in that it is mandatory or imperative, not merely precatory."[2] *Exportal Ltda. v. United States*, 902 F.2d 45, 50 (D.C. Cir. 1990) (internal quotation marks omitted). Although the statute leaves us no room to set aside the 72-hour deadline, the multiple issues of first impression this case raises, involving several statutes and conflicting views among the circuits, called for oral argument and a published opinion that is being issued past the deadline.

---

   (3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.

   (4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

   (5) The reasonable right to confer with the attorney for the Government in the case.

   (6) The right to full and timely restitution as provided in law.

   (7) The right to proceedings free from unreasonable delay.

   (8) The right to be treated with fairness and with respect for the victim's dignity and privacy.

18 U.S.C. § 3771(a).

[2] Amy directs our attention to an unpublished order from the Eleventh Circuit that granted a victim's motion to waive the 72-hour deadline. *See* Order, *In re Stewart*, No. 10-12344 (May 21, 2010). Even were we inclined to give an unpublished decision from another circuit weight that we do not give our own, *see* D.C. Cir. R. 36(e)(2) ("[A] panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition."), the Eleventh Circuit's order would not qualify for such consideration because it lacked any analysis of the merits of the motion.

Missing the deadline, however, does not deprive us of jurisdiction. In *Dolan v. United States*, 130 S. Ct. 2533 (2010), the Supreme Court held that missing § 3664's 90-day deadline for determining a victim's losses does not deprive a sentencing court of power to order restitution, *id.* at 2539; *see* 18 U.S.C. § 3664(d)(5) ("If the victim's losses are not ascertainable . . . 10 days prior to sentencing, . . . the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."). We think the Supreme Court's reasons for concluding that the 90-day deadline in *Dolan* was not jurisdictional apply with equal force to the 72-hour deadline here.

To begin with, like § 3664, the CVRA "does not specify a consequence for noncompliance with its timing provisions." *Dolan*, 130 S. Ct. at 2539 (internal quotation marks omitted). And just as § 3664 emphasizes "the importance of[] imposing restitution upon those convicted of certain federal crimes," *Dolan*, 130 S. Ct. at 2539, the CVRA stresses the need to "ensure that the crime victim is afforded the rights described in [§ 3771(a)]," 18 U.S.C. § 3771(b)(1). Moreover, as with the 90-day deadline for determining a victim's losses, "to read [the 72-hour deadline for deciding a mandamus petition] as depriving the . . . court of the power to order [relief] would harm those—the victims of crime—who likely bear no responsibility for the deadline's being missed and whom the statute also seeks to benefit." *Dolan*, 130 S. Ct. at 2540. Finally, "neither the language nor the structure of [either] statute requires denying the victim [relief] in order to remedy [the] missed . . . deadline," and "doing so would defeat the basic purpose of the [statute]." *Id.* at 2541. We thus conclude that the CVRA's 72-hour time limit for deciding mandamus petitions is not jurisdictional and exercise our authority to decide Amy's petition outside the deadline.

8

III

We must first decide the standard of review that applies to petitions for mandamus filed under the CVRA. This is an open question in our circuit. Monzel and the government both urge us to apply the traditional standard for mandamus, under which Amy must show that: (1) she has a clear and indisputable right to relief; (2) the district court has a clear duty to act; and (3) no other adequate remedy is available to her. *See Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002). Amy argues that even though Congress called the procedure it created under the CVRA "mandamus," 18 U.S.C. § 3771(d)(3), it intended to grant victims the ability to obtain ordinary appellate review, which in this case would mean *de novo* review of what it means to award "the full amount of the victim's losses." *See id.* § 2259(b)(1), (3).

There is a circuit split on the standard of review for mandamus petitions brought under the CVRA. Three circuits apply the traditional mandamus standard urged by Monzel and the government. *See In re Acker*, 596 F.3d 370, 372 (6th Cir. 2010); *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008); *In re Antrobus*, 519 F.3d 1123, 1125 (10th Cir. 2008). Four do not. *See Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1017-18 (9th Cir. 2006) (reviewing petition under the more generous "abuse of discretion or legal error" standard); *In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555, 563-64 (2d Cir. 2005) (reviewing petition for "abuse of discretion"); *see also In re Stewart*, 552 F.3d 1285, 1288-89 (11th Cir. 2008) (granting petition without asking whether victim had a clear and indisputable right to relief); *In re Walsh*, No. 06-4792, 2007 WL 1156999, at *2 (3d Cir. Apr. 19, 2007) (unpublished) (stating in dicta that "mandamus relief is available under a different, and less demanding, standard under 18 U.S.C. § 3771").

We think the best reading of the statute favors applying the traditional mandamus standard. To begin with, there is no indication that Congress intended to invoke any other standard. That Congress called for "mandamus" strongly suggests it wanted "mandamus." *See Morissette v. United States*, 342 U.S. 246, 263 (1952) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."). Furthermore, the paragraph that follows the mandamus provision states that the government may obtain ordinary appellate review of an order denying relief to a crime victim: "In any appeal in a criminal case, the Government may assert as error the district court's denial of any crime victim's right in the proceeding to which the appeal relates." 18 U.S.C. § 3771(d)(4). That Congress expressly provided for "mandamus" in § 3771(d)(3) but ordinary appellate review in § 3771(d)(4) invokes "the usual rule that when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004) (internal quotation marks omitted). If the government can obtain ordinary appellate review via mandamus, as Amy asserts, it is unclear what purpose § 3771(d)(4) serves by providing the government the same thing on direct appeal.

Finally, the abbreviated 72-hour deadline suggests that Congress understood it was providing the traditional "extraordinary remedy" of mandamus. *In re Brooks*, 383 F.3d 1036, 1041 (D.C. Cir. 2004). Courts will often be able to meet the compressed timeline under the traditional standard, because determining whether the lower court committed a

"clear and indisputable" error will not normally require extensive briefing or prolonged deliberation. By contrast, full briefing and plenary appellate review within the 72-hour deadline will almost always be impossible. *Cf. Antrobus*, 519 F.3d at 1130 ("It seems unlikely that Congress would have intended *de novo* review in 72 hours of novel and complex legal questions . . . .").

Amy's arguments that Congress provided ordinary appellate review but called it "mandamus" are not persuasive. Instructing courts to "ensure" that a crime victim is afforded certain rights, 18 U.S.C. § 3771(b)(1) (directing court to "ensure that the crime victim is afforded the rights described in [§ 3771(a)]"), says nothing about the standard of review. Neither does the fact that the court of appeals must "take up and decide" a petition within 72 hours. *Id.* § 3771(d)(3). A court that denies relief under the traditional mandamus standard has most certainly "take[n] up and decide[d]" the petition.[3]

Amy's resort to legislative history fares no better. She points particularly to a comment by Senator Feinstein, one of the CVRA co-sponsors, that § 3771(d)(3) makes "a new use of a very old procedure, the writ of mandamus." 150 CONG. REC. 7295 (2004). Even assuming that the words of a single lawmaker could determine the meaning of the CVRA, the Senator's statement says nothing about the standard of review for mandamus. More plausibly, her comment refers to the fact that prior to the CVRA most courts denied crime victims any opportunity to challenge lower court decisions impairing their

---

[3] Senator Feinstein's remark that "while mandamus is generally discretionary, [§ 3771(d)(3)] means that courts *must* review these cases," 150 CONG. REC. 7304 (2004) (emphasis added), is of no help to Amy, either. A court applying the traditional mandamus standard to a CVRA petition still "reviews" the petition.

rights as victims, whether through mandamus or otherwise. *See, e.g.*, *United States v. McVeigh*, 106 F.3d 325, 336 (10th Cir. 1997) (dismissing for lack of standing victims' mandamus petition and appeal of district court order prohibiting victims from attending trial); *United States v. Mindel*, 80 F.3d 394, 398 (9th Cir. 1996) (dismissing for lack of standing victim's appeal of restitution order and related mandamus petition); *see also United States v. Aguirre-González*, 597 F.3d 46, 54 (1st Cir. 2010) ("[T]he default rule [is] that crime victims have no right to directly appeal a defendant's criminal sentence."). By providing victims the opportunity to challenge such decisions through mandamus, Congress did indeed make a "new use of a very old procedure."[4]

## IV

To prevail on the merits of her petition for mandamus, Amy must show that she has a clear and indisputable right to relief, that the district court has a clear duty to act, and that

---

[4] Similarly, there is no reason to read Senator Feinstein's statement that § 3771(d)(3) permits crime victims to "in essence, immediately appeal a denial of their rights by a trial court," 150 CONG. REC. 7295, or Senator Kyl's comment that "appellate courts are designed to remedy errors of lower courts," *id.* at 7304, to suggest that either senator intended ordinary appellate review to apply. A crime victim's ability to "immediately appeal" a denial of her rights does not turn on the applicable standard of review, and a court applying the traditional mandamus standard can still remedy errors of law, provided the errors were clear and the petitioner has a right to relief. Here again, that Congress specifically provided for mandamus review suggests it intended appellate courts to remedy district court errors dealing with victims' rights only when such errors were clear and indisputable.

she has no other adequate remedy. *See Power*, 292 F.3d at 784. Amy's petition satisfies each of these conditions.

A

As a crime victim Amy has a "right to full and timely restitution as provided in law," 18 U.S.C. § 3771(a)(6), and the district court has a corresponding duty to "direct" Monzel to pay "the full amount of [her] losses as determined by the court," *id.* § 2259(b)(1). Because the record does not establish that Monzel's possession of her image caused *all* of her losses, Amy does not have a right to the full $3,263,758 she seeks. She is, however, entitled to the amount of her losses that Monzel proximately caused. Because the $5000 the court awarded was, by its own acknowledgement, less than the amount of harm Monzel caused Amy, we grant her petition in part.

1

Section 2259 directs the district court to order the defendant to pay restitution to the "victim" of a crime of child sexual exploitation. *See id.* § 2259(a)-(b). "Victim" is defined as "the individual harmed as a result of a commission of a crime under this chapter." *Id.* § 2259(c). Read together, these provisions tie restitution awards to harms caused "as a result" of a defendant's crime.

Section 2259 further instructs the court to award "the full amount of the victim's losses," *id.* § 2259(b)(1), defined as "any costs incurred by the victim for" six categories: (A) medical services; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees and other litigation costs; and (F) a catch-all category of "any other losses suffered by the victim as a

proximate result of the offense," *id.* § 2259(b)(3)(A)-(F). There is a circuit split over whether the proximate cause requirement in the catch-all category also applies to the preceding categories. Most circuits to consider the issue have held that it does. *See United States v. McDaniel*, 631 F.3d 1204, 1208-09 (11th Cir. 2011); *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999); *United States v. Crandon*, 173 F.3d 122, 125 (3d Cir. 1999). The Fifth Circuit alone has held it does not. *In re Amy Unknown*, No. 09-41238, slip op. at 12 (Mar. 22, 2011). We join the plurality in concluding that all of the categories require proximate cause. Unlike those circuits, however, our reasoning rests not on the catch-all provision of § 2259(b)(3)(F), but rather on traditional principles of tort and criminal law and on § 2259(c)'s definition of "victim" as an individual harmed "as a result" of the defendant's offense.

It is a bedrock rule of both tort[5] and criminal law that a defendant is only liable for harms he proximately caused. *See* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 26 cmt. a (2010) (calling proximate cause a "requirement[] for liability in tort");[6] W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 41, at 263 (5th ed. 1984) ("An essential element of the

---

[5] Although § 2259 is a criminal statute, it functions much like a tort statute by directing the court to make a victim whole for losses caused by the responsible party. *Cf. United States v. Bach*, 172 F.3d 520, 523 (7th Cir. 1999) ("Functionally, the Mandatory Victims Restitution Act is a tort statute, though one that casts back to a much earlier era of Anglo-American law, when criminal and tort proceedings were not clearly distinguished."). Thus, tort doctrine informs our thinking here.

[6] The *Restatement (Third) of Torts* uses the term "scope of liability" in favor of "proximate cause." *See* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 26 cmt. a.

plaintiff's cause of action for negligence, or . . . any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered. This connection usually is dealt with by the courts in terms of what is called 'proximate cause' . . . ."); WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 6.4, at 464 (2d ed. 2003) ("[For] crimes so defined as to require not merely conduct but also a specified result of conduct, the defendant's conduct must be the 'legal' or 'proximate' cause of the result."); *see also id.* § 6.4(c), at 471 ("The problems of [proximate] causation arise in both tort and criminal settings, and the one situation is closely analogous to the other. . . . [T]he courts have generally treated [proximate] causation in criminal law as in tort law . . . ."). The purpose of this rule is clear: "legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability." KEETON ET AL.*, supra*, § 41, at 264. Thus, we will presume that a restitution statute incorporates the traditional requirement of proximate cause unless there is good reason to think Congress intended the requirement not to apply. *See Sherwood Bros. v. District of Columbia*, 113 F.2d 162, 163 (D.C. Cir. 1940) (finding it "reasonable . . . to assume" that where a common law rule "has become embedded in the habits and customs of the community, . . . Congress had the common-law rule in mind when it legislated").

Here, nothing in the text or structure of § 2259 leads us to conclude that Congress intended to negate the ordinary requirement of proximate cause. By defining "victim" as a person harmed "as a result of" the defendant's offense, the statute invokes the standard rule that a defendant is liable only for harms that he proximately caused. That the definition does not include an express requirement of proximate cause makes no difference. "Congress [is] presumed to have legislated

against the background of our traditional legal concepts which render [proximate cause] a critical factor, and absence of contrary direction" here "[is] taken as satisfaction [of] widely accepted definitions, not as a departure from them." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 437 (1978) (quoting *Morissette*, 342 U.S. at 263) (internal quotation marks omitted).

We find the Fifth Circuit's argument to the contrary unpersuasive. In its recent decision, that court emphasized that other restitution statutes define "victim" as a person "*directly and proximately* harmed as a result of" the defendant's offense, *e.g.*, 18 U.S.C. § 3663(a)(2); *id.* § 3663A(a)(2); *id.* § 3771(e), whereas § 2259(c) defines "victim" as a person harmed merely "as a result" of the defendant's offense. But this difference in language tells us nothing about Congress's intent in passing § 2259, because the definitions in those other statutes were all enacted *after* § 2259. *Compare* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, sec. 205(a)(1)(F), § (a)(2), 110 Stat. 1214, 1230 (codified at 18 U.S.C. § 3663(a)(2)), *id.* sec. 204(a), § (a)(2), 110 Stat. 1228 (codified at 18 U.S.C. § 3663A(a)(2)), *and* Justice for All Act of 2004, Pub. L. No. 108-405, sec. 102(a), § (e), 118 Stat. 2260, 2263 (codified at 18 U.S.C. § 3771(e)), *with* Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, sec. 40113(b)(1), § (f), 108 Stat. 1796, 1910 (codified at 18 U.S.C. § 2259(c)). "[L]ater laws that 'do not seek to clarify an earlier enacted general term' and 'do not depend for their effectiveness upon clarification, or a change in the meaning of an earlier statute,' are 'beside the point' in reading the first enactment." *Gutierrez v. Ada*, 528 U.S. 250, 257-58 (2000) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998)). At most, the later statutes show that § 2259(c)'s use of the phrase "as a result of" is not the *only* way to impose

a proximate cause requirement. They do not prove that the phrase abrogates the requirement.

We similarly find little reason to conclude that Congress intended to eliminate the requirement of proximate cause for the categories of loss in § 2259(b)(3)(A)-(E) by including an express requirement in paragraph (F)'s catch-all provision. *Compare* 18 U.S.C. § 2259(b)(3)(A)-(E), *with id.* § 2259(b)(3)(F) (instructing court to award restitution for "any other losses suffered by the victim as a proximate result of the offense"). Had Congress meant to abrogate the traditional requirement for everything *but* the catch-all, surely it would have found a clearer way of doing so. Proximate cause ensures "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 989 (2010) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)) (internal quotation marks omitted). Without the limitation such a link provides, liability would attach to all sorts of injuries a defendant might indirectly cause, no matter how "remote" or tenuous the causal connection.[7] *Id.*; *see also* KEETON ET AL.*, supra*, § 41, at 266 (explaining that "the mere

---

[7] For example, without the requirement of proximate cause, if a victim who needed counseling as a result of Monzel's crime were to suffer injuries in a car accident on the way to her therapist, she would be entitled to restitution from Monzel for any medical expenses relating to the accident, *see* 18 U.S.C. § 2259(b)(3)(A) (providing restitution for "medical services relating to physical, psychiatric, or psychological care"), because those expenses would not have occurred but for his crime. *See* RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 26 ("Conduct is a factual cause of harm when the harm would not have occurred absent the conduct."). An "intervening act" (or "superseding cause") disrupts proximate causation, but not causation in fact. *See id.* § 34 cmt. b.

*fact* of causation, as distinguished from the nature and degree of the causal connection, can provide no clue of any kind to singling out those [who] are to be held *legally* responsible," for "once events are set in motion, there is, in terms of causation alone, no place to stop" (emphasis added)). It is conceivable that Congress could intend that those who violate laws against child sexual exploitation should pay restitution for such attenuated harms, but it seems unlikely it did so here. "If Congress really had wished [courts to award restitution for losses defendants did not proximately cause], it could have provided that. It would, however, take a very clear provision to convince anyone of anything so odd."[8] *Field v. Mans*, 516 U.S. 59, 68 (1995).

2

Because restitution awards under § 2259 are limited to harms the defendant proximately caused, we cannot say that Amy is clearly and indisputably entitled to the full $3,263,758 she seeks. Although the government submitted evidence that Amy suffered losses stemming from her sexual exploitation as a child, *see* Mot. for Restitution at 6-7; Gov't's Mem. of

---

[8] The Fifth Circuit suggests that restricting the proximate cause requirement to § 2259(b)(3)(F)'s catch-all category would not "open the door to limitless restitution." *Amy Unknown*, No. 09-41238, slip op. at 16. This is so, that court says, because § 2259 "includes a *general* causation requirement in its definition of a victim." *Id.* (emphasis added) (citing 18 U.S.C. § 2259(c) ("For purposes of this section, the term 'victim' means the individual harmed as a result of a commission of a crime under this chapter . . . .")). But a "general" causation requirement without a subsidiary proximate causation requirement is hardly a requirement at all. So long as the victim's injury would not have occurred but for the defendant's offense, the defendant would be liable for the injury.

Law Regarding the Victims' Losses at 6-15, and argued persuasively that possession of child pornography causes harm to the minors depicted, Mot. for Restitution at 9-12; *see also New York v. Ferber*, 458 U.S. 747, 758-60 (1982), it made no showing as to the amount of Amy's losses traceable to Monzel. Whatever else may be said of his crime, the record before us does not establish that Monzel caused *all* of Amy's losses.

Nor can we say that Amy is clearly and indisputably entitled to the full $3,263,758 from Monzel on the ground that her injuries are "indivisible." Amy argues at length that the causes of her injuries cannot reasonably be divided among the unknown number of possessors and distributors of her images and that Monzel is therefore jointly and severally liable with other possessors and distributors for the full amount of her losses. *See* RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 12 (2000) ("Each person who commits [an intentional tort] is jointly and severally liable for any indivisible injury legally caused by the tortious conduct."); KEETON ET AL., *supra*, § 52, at 347 ("[E]ntire liability rests upon the obvious fact that each has contributed to the single result, and that no reasonable division can be made.").

But the very sources upon which Amy relies undermine her argument. Prosser, whom she quotes at length, states that "[s]uch entire liability is imposed" where two or more causes produce a single "result" and "either cause would have been sufficient in itself" to produce the result or each was "essential to the injury." KEETON ET AL., *supra*, § 52, at 347. Here, Monzel's possession of Amy's image, which the district court found added to her injuries, was not "sufficient in itself" to produce all of them, nor was it "essential" to all of them. Amy's profound suffering is due in large part to her

knowledge that each day, untold numbers of people across the world are viewing and distributing images of her sexual abuse. *See* Mot. for Restitution at 6 ("The truth is, I am being exploited and used every day and every night somewhere in the world by someone."); Gov't's Mem. of Law Regarding the Victims' Losses at 8 ("Every day of my life I live in constant fear that someone will see my pictures and recognize me and that I will be humiliated all over again."). Monzel's possession of a single image of Amy was neither a necessary nor a sufficient cause of all of her losses. She would have suffered tremendously from her sexual abuse regardless of what Monzel did. *See also* KEETON ET AL., *supra*, § 52, at 346 (stating that "entire liability" is generally not imposed "where there is [a] factual basis for holding that [the] wrongdoer's conduct was not a cause in fact of part of the harm"). Similarly, the *Restatement (Third) of Torts*, upon which Amy also relies, instructs that an "indivisible injury" is "one in which the *entire* damages were caused by every legally culpable act of each person." RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 26 reporters' note cmt. g (emphasis added). As before, the government has not shown that Monzel caused the *entirety* of Amy's losses.

Joint and several liability may also be appropriate under § 3664(h) where there is more than one defendant and each has contributed to the victim's injury. *See* 18 U.S.C. § 3664(h) ("If the court finds that more than [one] defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.");[9] *see also*

---

[9] The government agrees with Amy that the best reading of § 2259 calls for joint and several liability in the full amount of Amy's

*United States v. Wall*, 349 F.3d 18, 26 (1st Cir. 2003) ("Under 18 U.S.C. § 3664(h), a court issuing a restitution order is permitted to . . . make each defendant liable for the full amount of restitution by imposing joint and several liability."); *accord United States v. Squirrel*, 588 F.3d 207, 212 (4th Cir. 2009); *United States v. Moten*, 551 F.3d 763, 768 (8th Cir. 2008); *United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008); *United States v. Nucci*, 364 F.3d 419, 422 (2d Cir. 2004); *United States v. Booth*, 309 F.3d 566, 576 (9th Cir. 2002); *United States v. Diaz*, 245 F.3d 294, 312 (3d Cir. 2001). It is unclear, however, whether joint and several liability may be imposed upon defendants in separate cases. The Fourth and Sixth Circuits have held, in unpublished opinions, that § 3664(h) does not apply to prosecutions where there is only one defendant. *See United States v. McGlown*, No. 08-3903, 2010 WL 2294527, at *3 (6th Cir. June 8, 2010); *United States v. Channita*, No. 01-4060, 2001 WL 578140, at *1 (4th Cir. May 30, 2001). The Fifth Circuit, by contrast—without addressing § 3664(h)'s applicability—said a district court could order joint and several liability for a lone defendant such as Monzel under § 3664(m)(1)(A), which provides that a district court may "enforce[]" a restitution order "by all other available and reasonable means." *See Amy Unknown*, No. 09-41238, slip op. at 17. We need not resolve this issue, because so long as the requirement of proximate cause applies, as it does here, a defendant can be jointly and severally liable only for injuries that meet that requirement. *See* RESTATEMENT (SECOND) OF TORTS § 879 cmt. b (1979). Because the record does not show that Monzel proximately

---

losses from her sexual exploitation as a child, but, pointing to § 3664(h), maintains that the statute affords the district court discretion on whether to order joint and several liability. *See* Resp. of the United States to Pet. for Writ of Mandamus at 15-16; Oral Arg. Tr. at 42, 49.

caused all of Amy's injuries, the district court did not clearly and indisputably err by declining to impose joint and several liability on him for the full $3,263,758 she seeks.[10]

The district court did, however, clearly err by awarding an amount of restitution it acknowledged was less than the harm Monzel had caused. Under § 3664(e), the government bears the burden of demonstrating the amount of loss the victim suffered "as a result of the [defendant's] offense." In this case, because the government failed to submit "any evidence whatsoever" regarding the amount of Amy's losses attributable to Monzel,[11] Restitution Order at 3, the district court said it had no basis upon which to calculate the amount of harm Monzel had proximately caused her and so decided to award "nominal" restitution of $5000, *id.* at 5.

---

[10] Amy's effort to analogize Monzel's possession to participation in a "joint enterprise" with "mutual agency, so that the act of one is the act of all," Pet. for Writ of Mandamus at 24 (quoting WILLIAM L. PROSSER, THE LAW OF TORTS § 52, at 315 (4th ed. 1971)), also fails. There is no evidence at all in the record that Monzel acted "in concert" with others to distribute and possess Amy's image, as is required for such enterprise liability to apply. KEETON ET AL., *supra*, § 52, at 346.

[11] In an opinion issued several months prior to the restitution order, the district court concluded that Amy's "alleged losses were proximately caused by Monzel's possession of [her] image[]." *United States v. Monzel*, 746 F. Supp. 2d 76, 88 (D.D.C. 2010). The court made clear, however, that it was *not* deciding at that point the amount of Amy's losses that Monzel had caused. Rather, the court was "only identif[ying] the losses alleged for the purposes of considering the causal connection between them and [Monzel's] conduct." *Id.* at 84 n.12. Whether "the Government ha[d] met its burden to prove the losses or the amount to be apportioned to Monzel" were issues to be decided later. *Id.*

But in the very next sentence the court said it had "no doubt" that this award was "less than the actual harm" Monzel had caused Amy. *Id.* at 5. This was clear and indisputable error. A district court cannot avoid awarding the "full amount of the victim's losses," 18 U.S.C. § 2259(b)(1), simply because the attribution analysis is difficult or the government provides less-than-ideal information. The court must order restitution equal to the amount of harm the government proves the defendant caused the victim. *See id.* § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government."). Certainly the court cannot award *less* restitution than it determines the victim is entitled to.

We recognize, of course, that determining the dollar amount of a victim's losses attributable to the defendant will often be difficult. In a case such as this one, where the harm is ongoing and the number of offenders impossible to pinpoint, such a determination will inevitably involve some degree of approximation. But this is not fatal. Section 2259 does "not impose[] a requirement of causation approaching mathematical precision." *United States v. Doe*, 488 F.3d 1154, 1160 (9th Cir. 2007). Rather, the district court's charge is "to estimate, based upon facts in the record, the amount of [the] victim's loss with some reasonable certainty." *Id.*

On remand, the district court should consider anew the amount of Amy's losses attributable to Monzel's offense and order restitution equal to that amount. Although there is relatively little in the present record to guide its decisionmaking on this, the district court is free to order the government to submit evidence regarding what losses were

caused by Monzel's possession of Amy's image or to order the government to suggest a formula for determining the proper amount of restitution. The burden is on the government to prove the amount of Amy's losses Monzel caused. We expect the government will do more this time around to aid the district court. We express no view as to the appropriate level of restitution, but emphasize that in fixing the amount the district court must rely upon some principled method for determining the harm Monzel proximately caused.

B

To prevail on her petition, Amy must also show that mandamus is her only adequate remedy. *See Power*, 292 F.3d at 784. Since the enactment of the CVRA, every circuit to consider the question has held that mandamus is a crime victim's only recourse for challenging a restitution order. *See Aguirre-González*, 597 F.3d at 52-55 (1st Cir.); *United States v. Hunter*, 548 F.3d 1308, 1317 (10th Cir. 2008) ("We hold that individuals claiming to be victims under the CVRA may not appeal from the alleged denial of their rights under that statute except through a petition for a writ of mandamus as set forth by 18 U.S.C. § 3771(d)(3)."); *cf. Amy Unknown*, No. 09-41238, slip op. at 11 (5th Cir.) ("affirm[ing]" that "[a crime victim] likely has no other means for obtaining review of the district court's decision not to order restitution" besides mandamus (quoting *In re Amy*, 591 F.3d 792, 793 (5th Cir. 2009)) (internal quotation marks omitted)).[12] We agree.

---

[12] The Sixth Circuit's position on the issue is unclear. In *In re Acker*, 596 F.3d 370 (2010), the Sixth Circuit held that a putative victim has no right to directly appeal a district court decision not to award restitution where the victim simultaneously files a mandamus petition raising "identical issues" as the appeal, *see id.* at 373. *Acker* distinguished an earlier Sixth Circuit decision, *In re*

Although we "have jurisdiction of appeals from all final decisions of the district courts," 28 U.S.C. § 1291, the general rule is that "one who is not a party or has not been treated as a party to a judgment has no right to appeal therefrom." *Karcher v. May*, 484 U.S. 72, 77 (1987). However, "[t]he Supreme Court has 'never . . . restricted the right to appeal to named parties to [a] litigation,'" *In re Sealed Case (Med. Records)*, 381 F.3d 1205, 1211 n.4 (D.C. Cir. 2004) (omission and second alteration in original) (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 7 (2002)), and "if [a] decree affects [a third party's] interests, he is often allowed to appeal," *id.* (second alteration in original) (quoting *Castillo v. Cameron Cnty.*, 238 F.3d 339, 349 (5th Cir. 2001)).

Amy argues that even though she was not a party below, she has a direct interest in the district court's restitution order and should therefore be allowed to appeal. Her argument, however, overlooks that she is seeking to appeal part of Monzel's *sentence*. Regardless of the rules that govern non-party appeals in other contexts, "the default rule [is] that crime victims have no right to directly appeal a defendant's criminal sentence." *Aguirre-González*, 597 F.3d at 54; *see also Hunter*, 548 F.3d at 1312 ("[W]e are aware of no precedent for allowing a non-party appeal that would reopen a criminal case following sentencing.").

Amy claims that several cases from this and other circuits reflect "well-recognized authority . . . permitting non-parties

---

*Siler*, 571 F.3d 604 (2009), that permitted victims to directly appeal a district court's denial of their motion under the CVRA to obtain the defendants' presentence reports, *id.* at 607-09, on the ground that the *Siler* victims had "been effectively treated as intervening parties" by the district court and did not assert their rights under the CVRA until "eighteen months after the criminal proceedings had concluded," *Acker*, 596 F.3d at 373.

to appeal decisions in criminal cases which directly harm their rights." Pet'r's Mot. to Consolidate Appeal with Mandamus Pet. at 8. But none of the cases she cites involved a request by a victim to alter a defendant's sentence. Rather, all of them concerned disclosure of information in which the non-party had some interest. *See id.* at 8-9 n.4 (citing *United States v. Antar*, 38 F.3d 1348 (3d Cir. 1994); *In re Subpoena to Testify Before Grand Jury Directed to Custodian of Records*, 864 F.2d 1559 (11th Cir. 1989); *Anthony v. United States*, 667 F.2d 870 (10th Cir. 1981); *In re Smith*, 656 F.2d 1101 (5th Cir. 1981); *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980); *United States v. Briggs*, 514 F.2d 794 (5th Cir. 1974)); *see also* Amy's Resp. to Gov't Mot. to Dismiss at 17 (citing *Doe v. United States*, 666 F.2d 43 (4th Cir. 1981)); *Hubbard*, 650 F.2d at 311 n.67 ("Federal courts have frequently permitted third parties to assert their interests in preventing disclosure of material sought in criminal proceedings or in preventing further access to materials already so disclosed."). Here, by contrast, Amy is asking the court to revisit her restitution award, which *is* part of Monzel's sentence.[13] *See, e.g.*, 18 U.S.C. § 3663A(a)(1)

---

[13] The *only* case Amy points us to where a court has allowed a crime victim to appeal part of a defendant's sentence is *United States v. Kones*, 77 F.3d 66 (3d Cir. 1996), in which the Third Circuit heard a victim's appeal of a district court order denying restitution, *see id.* at 68. *Kones*'s persuasive value on this point is negligible, however, given that the government did not contest the court's jurisdiction to hear the victim's appeal, *see* Def.-Appellee's Br. at 1, *Kones*, No. 95-1434 (3d Cir. Aug. 16, 1995), and the court's statement of its jurisdiction was one sentence long and devoid of discussion, *see* 77 F.3d at 68; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) (stating that "drive-by jurisdictional rulings" where jurisdiction is "assumed by the parties[] and . . . assumed without discussion by the Court" have "no precedential effect"); *Lewis v. Casey*, 518 U.S. 343, 352

("[W]hen sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense . . . ."); *id.* § 3664(*o*) ("A sentence that imposes an order of restitution is a final judgment . . . ."); *United States v. Cohen*, 459 F.3d 490, 496 (4th Cir. 2006) ("[R]estitution is . . . part of the criminal defendant's sentence."); *United States v. Acosta*, 303 F.3d 78, 87 (1st Cir. 2002) ("It is undisputed that restitution is part of a sentence."); *United States v. Syme*, 276 F.3d 131, 159 (3d Cir. 2002) ("Restitution orders have long been treated as part of the sentence for the offense of conviction . . . ."). Amy thus runs headlong into the rule against direct appeals of sentences by crime victims.

The CVRA does not alter this rule. To begin with, "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). That the CVRA expressly provides for mandamus review makes us reluctant to read into it an implied right to direct appeal. Moreover, the CVRA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146-47 (1985)). Not only does the CVRA provide for mandamus review, but it also expressly authorizes the government to assert crime victims' rights on direct appeal, *see* 18 U.S.C. § 3771(d)(4), and sets forth specific rules for when crime victims may move to reopen sentences, *see id.* § 3771(d)(5). That Congress included these provisions but did *not* provide for direct

---

n.2 (1996) ("[W]e have repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect.").

appeals by crime victims is strong evidence that it did not intend to authorize such appeals.

It is also significant that while Congress expressly authorized the government to assert victims' rights on direct appeal under § 3771(d)(4), it made no such provision for victims themselves. *See id.* § 3771(d)(4) ("In any appeal in a criminal case, the Government may assert as error the district court's denial of any crime victim's right in the proceeding to which the appeal relates."). This contrasts with § 3771(d)(3), which authorizes both the government *and* victims to bring mandamus petitions. *See id.* § 3771(d)(3) (stating that any "movant" who has asserted a crime victim's rights before the district court may petition for mandamus); *id.* § 3771(d)(1) (providing that the crime victim, the crime victim's representative, and the government may assert a victim's rights before the district court). Had Congress intended to allow victims to directly appeal, it seems likely it would have provided them that right under § 3771(d)(4) just as it provided them mandamus petitions under § 3771(d)(3). *Cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

Amy also argues that she is entitled to a direct appeal because two other circuits permitted crime victims to appeal restitution orders prior to the enactment of the CVRA, a statute that was intended to broaden, not narrow, available remedies. *See United States v. Perry*, 360 F.3d 519, 524-33 (6th Cir. 2004) (permitting crime victim to appeal vacatur of lien enforcing victim's restitution award under the Mandatory Victims Restitution Act, 18 U.S.C. §§ 3663A, 3664); *United States v. Kones*, 77 F.3d 66, 68 (3d Cir. 1996) (hearing crime

victim's appeal of district court order denying restitution under the Victim and Witness Protection Act, 18 U.S.C. § 3663); *see also* 150 CONG. REC. 7301 (statement of Sen. Kyl) ("It is not the intent of [the CVRA] to limit any laws in favor of crime victims that may currently exist, whether these laws are statutory, regulatory, or found in case law."); *id.* (statement of Sen. Feinstein) ("[I]t is not our intent to restrict victims' rights or accommodations found in other laws."). But even if two circuits allowed crime victims to appeal restitution orders prior to the enactment of the CVRA, a plurality of circuits did not. *See Mindel*, 80 F.3d at 398 (9th Cir.); *United States v. Kelley*, 997 F.2d 806, 807 (10th Cir. 1993); *United States v. Johnson*, 983 F.2d 216, 217 (11th Cir. 1993); *United States v. Grundhoefer*, 916 F.2d 788, 793 (2d Cir. 1990). There was no settled right of appeal for the CVRA to narrow.[14]

Amy responds that the cases preventing victims from appealing restitution orders are irrelevant because they were decided under the Victim and Witness Protection Act (VWPA), which, unlike § 2259, makes restitution discretionary rather than mandatory, takes into account the defendant's financial circumstances, and does not provide victims much opportunity to influence sentencing proceedings. *See* 18 U.S.C. § 3663(a). We should look instead, she argues, to *United States v. Perry*, 360 F.3d 519, a 2004 Sixth Circuit decision that permitted a crime victim to appeal an adverse restitution order under the Mandatory Victims Restitution Act (MVRA), a statute more analogous to

---

[14] Moreover, only one circuit had ever allowed a victim to appeal the *amount* of restitution. *See Kones*, 77 F.3d at 68 (3d Cir.). Another circuit had allowed a victim to appeal an order impairing her ability to *collect* restitution, *see Perry*, 360 F.3d at 522, 524-33 (6th Cir.), but did not consider whether the victim could appeal the actual amount of the award.

§ 2259, *id.* at 524-33. *Perry* expressly declined to follow the VWPA cases on the ground that the MVRA is "dramatically more 'pro-victim'" than the VWPA, *id.* at 524: the MVRA makes restitution mandatory, not discretionary, *see* 18 U.S.C. § 3663A(a)(1); requires the court to award full restitution regardless of the defendant's financial circumstances, *see id.* § 3664(f)(1)(A); and gives victims a role in the sentencing process, *see id.* § 3664(d)(2).

But the victim in *Perry* was not appealing an order *awarding* restitution; rather, she was appealing an order affecting her ability to *enforce* an order awarding restitution. *See Perry*, 360 F.3d at 522 (describing victim's appeal of order vacating judgment lien she had obtained to enforce her restitution award). Granting the victim relief would not have altered the defendant's sentence. Here, by contrast, Amy is appealing the order awarding her restitution and is seeking a higher award. Granting her relief *would* alter the defendant's sentence.[15]

Moreover, the CVRA and the MVRA differ significantly in the extent to which they provide remedies for challenging restitution orders. The MVRA may provide victims an opportunity to submit affidavits detailing their losses, *see* 18 U.S.C. § 3664(d)(2), but it does not provide a right to petition the court of appeals for mandamus, grant the government express power to assert crime victims' rights on appeal, or set forth procedures by which victims may move to reopen sentences. Thus, the Supreme Court's teaching that a

---

[15] In any event, *Perry* is not the only case to consider a victim's right to appeal an MVRA restitution order. In *United States v. United Security Savings Bank*, 394 F.3d 564 (8th Cir. 2004) (per curiam), the Eighth Circuit said that a crime victim may *not* appeal a restitution order made under the MVRA, *id.* at 567. Thus, a victim's right to appeal under the MVRA is far from settled.

"statute's carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly,'" *Mertens*, 508 U.S. at 254 (quoting *Russell*, 473 U.S. at 146-47), applies with much greater force here than in *Perry*.

For these reasons, we hold that Amy may not directly appeal her restitution award and we grant the government's motion to dismiss her appeal.[16] Mandamus is Amy's only recourse to challenge the award.

V

We grant Amy's petition for mandamus in part and instruct the district court to consider anew the amount of her losses attributable to Monzel and to order restitution equal to that amount. We further dismiss Amy's direct appeal of her restitution award and dismiss as moot her motion to consolidate her mandamus petition with her direct appeal.

*So ordered.*

---

[16] Amy also argues that she is entitled to appeal the district court's restitution order under the collateral order doctrine. Because she cannot directly appeal her restitution award in any event, the collateral order doctrine is of no help to her.