

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-1996

# United States v. Kones

Precedential or Non-Precedential:

Docket 95-1434

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"United States v. Kones" (1996). *1996 Decisions.* Paper 236.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/236

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NOS. 95-1434 and 95-1435


UNITED STATES OF AMERICA

v.

RICHARD JOSEPH KONES

Michele Harris
Appellant*

*Pursuant to Rule 12(a), FRAP



On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. Action Nos. 94-cr-00266 and 95-cr-00037)


Argued December 5, 1995

BEFORE:  SLOVITER, Chief Judge, and STAPLETON
and SAROKIN, Circuit Judges

(Opinion Filed February 20, 1996)



Michael R. Stiles
United States Attorney
Walter S. Batty, Jr.
Assistant U.S. Attorney
 Chief of Appeals
Edward Zittlau (Argued)
Assistant U.S. Attorney
Office of the U.S. Attorney
615 Chestnut Street - Room 1250
Philadelphia, PA  19106
 Attorneys for Appellee
 United States of America

Laurence S, Shtasel
Blank, Rome, Comisky & McCauley


1

1200 Four Penn Center Plaza
Philadelphia, PA 19103
 and
Bruce A. Franzel (Argued)
Oxenburg & Franzel
1760 Market Street
Philadelphia, PA 19103
 Attorneys for Appellee
 Richard Joseph Kones

Anna M. Durbin (Argued)
Pamela A. Wilk
50 Rittenhouse Place
Ardmore, PA 19003
 Attorneys for Appellant
 Michele Harris

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Michele Harris appeals the judgment of sentence imposed on Richard Kones. At sentencing, Harris sought restitution pursuant to the restitution provisions of the Victim and Witness Protection Act of 1982 (VWPA), 18 U.S.C. §§ 3663-3664. The district court concluded that it had no power to order restitution because Harris was not a "victim" of Kones' offenses within the meaning of 18 U.S.C. § 3663(a). We agree with this conclusion and will affirm.

I.

Kones was a medical doctor licensed to practice medicine in the Commonwealth of Pennsylvania when a grand jury indicted him on 200 counts of mail fraud in violation of 18

2

U.S.C. § 1341. Specifically, the indictment alleged that Kones had submitted over $1,000,000 in false insurance claims based on nonexistent medical services to eighteen of his patients. Harris was one of those patients. According to the indictment, Kones submitted approximately $85,000 in false insurance claims for services that he never provided to Harris.

The government also filed an information adding charges for filing false claims with the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) in violation of 18 U.S.C. § 287 and laundering the funds received from the insurance companies in violation of 18 U.S.C. § 1957. The information sought criminal forfeiture of $2 million pursuant to 18 U.S.C. § 982.

Kones and the government reached a plea agreement. Kones plead guilty to all counts and agreed to the $2 million forfeiture for purposes of restitution to the health insurance companies which were victims of his fraud, a sentence of between 51 and 71 months in prison, a fine of up to $4 million, a payment of $1.5 million to the IRS to settle outstanding tax claims, a $10,100 special assessment, and the surrender of all of his licenses to practice medicine in the United States.

Before sentencing, Harris filed a claim for $1 million in restitution and submitted supporting affidavits. Harris alleged that Kones gave her prescriptions for excessive amounts of a pain killer. She contended that she became addicted, lost her job, and continues to need psychiatric care. According to Harris, Kones did this in furtherance of his scheme and it was

3

only by inducing her drug dependency that he was able to control her and carry out his fraudulent scheme.

Accepting arguendo Harris' allegations of injury and Kones' motivation in prescribing drugs for her, the district court rejected Harris' claim for restitution and sentenced Kones pursuant to the plea agreement. The district court concluded that it was without power to order restitution to Harris because Harris was not a "victim" of Kones' offenses of conviction within the meaning of 18 U.S.C. § 3663(a).

## II.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231 as Kones was charged with violations of federal law. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review regarding whether a district court has power to order restitution. United States v. Seligsohn, 981 F.2d 1418, 1421 (3d Cir. 1992).

## III.
### A.

VWPA, 18 U.S.C. § 3663(a)(1) provides that a court, "when sentencing a defendant convicted of an offense under this title or section 46312, 46502, or 46504 of title 49, may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense." Thus, in order for a district court to have power to order restitution, the person

4

awarded restitution must be "a victim of such offense." Even where there is a "victim of the offense," § 3663(d) provides that the court may decline to order restitution "to the extent that the court determines that the complication and prolongation of the sentencing process [required to do so] outweighs the need to provide restitution to any victims." We understand this provision to call for a weighing of the burden of adjudicating the restitution issue against the desirability of <u>immediate</u> restitution -- or otherwise stated, a weighing of the burden that would be imposed on the court by adjudicating restitution in the criminal case against the burden that would be imposed on the victim by leaving him or her to other available legal remedies.[1]

The legislative history of the VWPA does not provide a direct answer to the issue posed in this appeal, but it does reflect what Congress contemplated would be involved in making restitution awards and we find this helpful. Nothing in the legislative history evidences an expectation that a sentencing judge would adjudicate, in the course of the court's sentencing proceeding, all civil claims against a criminal defendant arising from conduct related to the offense. Rather, it was expected that entitlement to restitution could be readily determined by

---

[1] Section 5E1.1 of the United States Sentencing Guidelines provides that the sentencing court "<u>shall</u> . . . enter a restitution order if such order is authorized under 18 U.S.C. §§3663-3664" except to the extent that "full restitution has been made, or to the extent the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of a restitution requirement outweighs the need to provide restitution to any victims through the criminal process." U.S.S.G. § 5E1.1 (emphasis added).

5

the sentencing judge based upon the evidence he had heard during the trial of the criminal case or learned in the course of determining whether to accept a plea and what an appropriate sentence would be. While the original statute, similar to the current version, provided for discretion to decline to grant restitution when it would be an undue burden to do so, this was not because Congress expected that sentencing judges would be required to hold an evidentiary hearing on <u>liability</u> issues in the course of the sentencing proceedings. As the Senate Report explains, "the Committee added this provision to prevent sentencing hearings from becoming prolonged and complicated trials <u>on the question of damages owed the victim</u>." S. Rep. No. 532, 97th Cong., 2d Sess. 31 (1982), <u>reprinted</u> <u>in</u> 1982 U.S.C.A.N. 2515, 2537 (emphasis added). The kind of case that Congress had in mind was one in which liability is clear from the information provided by the government and the defendant and all the sentencing court has to do is calculate damages. <u>See</u> <u>id</u>. at 2536-37 (discussing a case where the victim of a purse snatching suffered a broken hip).

This aspect of Congress' expectation is important because it counsels against construing the text of the statute in a way that would bring fault and causation issues before the sentencing court that cannot be resolved with the information otherwise generated in the course of the criminal proceedings on the indictment. We are persuaded that this counsel should guide our interpretation of the restitution provisions of the VWPA.

6

In <u>Hughey v. United States</u>, 495 U.S. 411 (1990), the Supreme Court interpreted the phrase "restitution to any victim of such offense" as used in § 3663(a). Hughey was indicted for three counts of theft by a Postal Service employee in violation of 18 U.S.C. § 1709, and three counts of use of an unauthorized credit card in violation of 18 U.S.C. § 1029(a)(2). After he pled guilty to one count of use of an unauthorized credit card, the district court ordered restitution for loss caused by all of the counts. <u>Id</u>. at 413-14. The Supreme Court held that "such offense" in § 3663(a)(1) refers to the offense of conviction. In other words, Congress authorized restitution "only for the loss caused by the specific conduct that is the basis of the offense of conviction." <u>Id</u>. at 413. Accordingly, the district court exceeded its powers when it ordered restitution for similar and related conduct that was not a part of the conduct constituting the offense of which the defendant was convicted. <u>Id</u>. at 422.

Not long after the Supreme Court decided <u>Hughey</u>, Congress amended the VWPA by adding 18 U.S.C. § 3663(a)(2) which provides:

> For the purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any persons directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

Crime Control Act of 1990, Pub. L. No. 101-647, 104 Stat. 4789, 4863 (1990). This amendment, as Kones stresses, expands the restitution granting authority of district courts beyond that found in <u>Hughey</u>. By its own terms, however, § 3663(a)(2) applies

7

only in cases where a scheme, conspiracy, or pattern of criminal activity is an element of the offense of conviction. In such cases, § 3663(a)(2) authorizes restitution to "any person directly harmed by the defendants' criminal conduct in the course of the scheme, conspiracy, or pattern" that was an element of the offense of conviction.

Section 3663(a)(2) expanded the district courts' restitution powers in such cases to the extent that a district court could order restitution for any harm directly caused by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern, even though such conduct is not "the specific conduct that is the basis of the offense of conviction." See United States v. Seligsohn, 981 F.2d 1418, 1421–22 (3d Cir. 1992). For example, where a defendant is convicted of defrauding person X and a fraudulent scheme is an element of that conviction, the sentencing court has power to order restitution for the loss to defrauded person Y directly caused by the defendant's criminal conduct, even where the defendant is not convicted of defrauding Y.

This expansion of restitution powers, however, is limited by its terms. Section 3663(a)(2) is not so broad that it permits a district court to order restitution to anyone harmed by any activity of the defendant related to the scheme, conspiracy, or pattern. Rather, in order for restitution to be permissible, the harm must "directly" result from the "criminal conduct" of the defendant. In this context, we interpret "direct" to require that the harm to the victim be closely related to the scheme,

8

rather than tangentially linked.[2]  Further, we interpret

"criminal defendant's conduct in the course of the scheme,

conspiracy or pattern" to mean conduct that is both engaged in

the furtherance of the scheme, conspiracy or pattern, and

proscribed by the criminal statute the defendant was convicted of

violating.[3]  When § 3663 is construed in this manner, restitution

liability issues of fault and causation can be resolved on the

basis of the evidence tendered by the government and the

defendant in the criminal case without resort to evidentiary

hearings on these collateral issues.


B.

Here the offense of conviction was mail fraud in

violation of 18 U.S.C. § 1341.[4]  A person commits mail fraud when

---

[2]  The scanty legislative history on point provides us with only
the following information:

> The use of "directly" precludes, for example,
> an argument that a person has been harmed by
> a financial institution offense that results
> in a payment from the insurance fund because,
> as a taxpayer, a part of that person's taxes
> go to the insurance fund.

H.R. Rep. No. 681(I), 101st Cong., 2d Sess. 177 n.8, reprinted in
1990 U.S.C.C.A.N. 6472, 6583 n.8.

[3]  We have no occasion here to address, and reserve for another
day, the issue of whether in this context "conduct in the course
of the . . . conspiracy" includes only conduct prohibited by the
substantive statute which the co-conspirators conspired to
violate.

[4]  18 U.S.C. § 1341 provides:

> Whoever, having devised or intending to
> devise any scheme or artifice to defraud, or
> for obtaining money or property by means of
> false or fraudulent pretenses,

9

she has "devised" or intends to "devise" a scheme to defraud, and she uses the mails for the purpose of executing or attempting to execute the scheme. 18 U.S.C. § 1841; see United States v. Frey, 42 F.3d 795, 797 (3d Cir. 1994). Since a scheme is an element of mail fraud, 18 U.S.C. § 3663(a)(2) applies. Harris is not a "victim" of Kones' mail fraud offenses within the meaning of § 3663(a), however.

The conduct that Harris alleges caused her harm is not conduct proscribed by the mail fraud statute. The conduct

> representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or received therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than five years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

Kones also plead guilty to violations of 18 U.S.C. §§ 287 and 1957. However, it is apparent that Harris' alleged injuries are wholly unrelated to the conduct which violated those statutory provisions.

10

proscribed by the mail fraud statute is the use of the mails for the purpose of executing a scheme to defraud. Specifically, in this case it is Kones' submission of false insurance claims through the mail. Harris does not allege that she was injured by the submission of the insurance claims. She alleges that she was injured by faulty medical services. While Harris alleges that Kones' provision of drugs to her was malpractice and was done in furtherance of his scheme, the provision of drugs, properly or improperly, is not conduct proscribed by the mail fraud statute.

Thus, we agree with the district court that "victim" within the meaning of § 3663(a)(1) and (a)(2) does not include a person who has experienced no harm arising from the criminal conduct that gives rise to the offense of conviction. As the facts of this case illustrate, to hold otherwise would unduly burden sentencing courts. No information developed in the course of these proceedings provided the district court with a basis for adjudicating whether Kones' treatment of Harris was legal or illegal, was consistent or inconsistent with medical standards prevailing in the community, or was or was not causally related to the injuries she allegedly suffered. As the district court aptly observed, it could not grant Harris' restitution request without fully litigating a tangentially related medical malpractice case as a part of the sentencing process.

## III.

For the foregoing reasons, we will affirm the judgment of the district court.

11