**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2787
_____

UNITED STATES OF AMERICA

v.

NORMAN STOERR

Sevenson Environmental Services,*
                                    Appellant

*pursuant to FRAP 12(a)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-08-cr-0521-001)
District Judge: Susan D. Wigenton
_____

Submitted Under Third Circuit LAR 34.1
June 21, 2012

Before:  AMBRO, VANASKIE and ALDISERT, *Circuit
Judges*

1

(Filed: August 28, 2012)

_____

OPINION

_____

Lawrence S. Lustberg, Esq.
Gibbons P.C.
One Gateway Center
Newark, NJ 07102

      *Counsel for Appellant Sevenson Environmental Services, Inc.*

Minryu Kim, Esq.
Alan J. Bozer, Esq.
Phillips Lytle LLP
3400 HSBC Center
Buffalo, NY 14203

      *Counsel for Appellant Sevenson Environmental Services, Inc.*

Mark E. Coyne, Esq., Chief, Appeals Division
United States Attorney's Office
970 Broad Street, Suite 700
Newark, NJ 01702

      *Counsel for Appellee United States of America*

Sharis A. Pozen, Esq., Acting Assistant Attorney General
(*Did not enter an appearance*)

Scott D. Hammond, Esq., Deputy Assistant Attorney General
(*Did not enter an appearance*)
John P. Fonte, Esq.
John J. Powers, III, Esq.
Finnuala K. Tessier, Esq.
United States Department of Justice
Antitrust Division
950 Pennsylvania Ave., NW
Room 3224
Washington, DC 20530

*Counsel for Appellee United States of America*

VANASKIE, *Circuit Judge*.

Norman Stoerr was convicted of participating in an illegal bid rigging and kickback scheme in connection with his employment at Sevenson Environmental Services, Inc. ("Sevenson"). Sevenson, a non-party to the underlying criminal proceeding, voluntarily compensated one of Stoerr's victims, Tierra Solutions, Inc. ("Tierra"). At Stoerr's sentencing, Sevenson sought restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A *et seq.*, for reimbursement of the amount that it paid as compensation to Tierra. The District Court denied Sevenson's request for restitution, instead ordering that Stoerr pay restitution to Tierra. Sevenson now attempts to appeal Stoerr's sentence, contending that the District Court erred in declining to grant its request for restitution. We will dismiss Sevenson's appeal because, as a non-party, it lacks standing to appeal.

I.

3

On July 23, 2008, Stoerr pled guilty to bid rigging, in violation of 15 U.S.C. § 1; conspiracy to provide kickbacks and to defraud the United States, in violation of 18 U.S.C. § 371; and assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2). The convictions stemmed from kickback payments that Stoerr solicited and accepted from sub-contractors in connection with projects managed by Sevenson, his employer from 1980 to October 2003.

Sevenson obtained contracts in 2000 and 2004 with the United States Army Corps of Engineers to perform remediation services as the prime contractor at the Federal Creosote Superfund Site ("Federal Creosote") in Manville, New Jersey. From 1999 to 2007, Sevenson also had a contract with Tierra, a private company, to perform remediation services as the general contractor at the Diamond Alkali Superfund Site ("Diamond Alkali") in Newark, New Jersey. The Environmental Protection Agency was responsible for paying Sevenson for its services at Federal Creosote, and Tierra was responsible for paying Sevenson for its services at Diamond Alkali. At both project sites, Sevenson hired sub-contractors, and then sought reimbursement from the payer for the sub-contractor charges, plus a fee equal to a fixed percentage of the sub-contractor charges.

From 2000 to 2002, Stoerr was the superintendent at Diamond Alkali, and from 2002 to 2003, he was the assistant project manager/contracts administrator at Federal Creosote. At Diamond Alkali, Stoerr was responsible for soliciting vendors, and at Federal Creosote, he was responsible for

4

soliciting bids for sub-contracts. In both positions, he reported to Gordon McDonald, the project manager.

From 2000 to 2004, Stoerr, at McDonald's direction, solicited and accepted kickbacks valued at $77,132 from sub-contracting companies National Industrial, Inc. ("National Industrial"), JMJ Environmental Services, Inc. ("JMJ"), Bennett Environmental Inc., and Haas Sand & Gravel LLC.[1] In return for the kickbacks, Stoerr and McDonald treated the sub-contracting companies favorably in awarding sub-contracts for the Federal Creosote and Diamond Alkali projects.

Stoerr and McDonald passed the cost of the kickbacks on to Tierra and to the EPA by including the amount of the kickbacks in the sub-contractors' invoices that they submitted for reimbursement. In total, the District Court determined that Stoerr's and McDonald's scheme resulted in losses of $134,098.96 to the EPA and $257,129.22 to Tierra. Of the $257,129.22 in losses to Tierra, the District Court found that $25,000 related to kickback payments from National Industrial and its partial owner, Victor Boski, and $232,129.22 related to kickback payments from JMJ and its owner, John Drimak Jr.

After Sevenson learned of the kickbacks scheme, it paid Tierra $202,759.04 to compensate it for its losses relating to the JMJ and Drimak scheme, and $38,158.11 to compensate it for its losses relating to the National Industrial

---

[1] The kickbacks to Stoerr were in the form of money, tools, and a cruise.

and Boski scheme. It then commenced a civil action against Stoerr in state court to recover its losses, and sought restitution in connection with Stoerr's sentencing.

Regarding Stoerr's sentencing, Sevenson filed letters with the United States Probation Office and with the District Court, seeking restitution from Stoerr under the MVRA. The MVRA "compels a sentencing court to order a defendant convicted of certain crimes, including crimes against property, to make restitution to his victim." *United States v. Aguirre-Gonzalez*, 597 F.3d 46, 51 (1st Cir. 2010) (emphasis omitted) (quoting *United States v. Innarelli*, 524 F.3d 286, 292-93 (1st Cir. 2008)) (internal quotation marks omitted). In particular, the MVRA provides that "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). The MVRA also provides that "[i]f a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation." § 3664(j)(1). Sevenson claimed that it was entitled to restitution because it reimbursed Tierra for its losses.[2]

---

[2] Sevenson also initially sought restitution as a victim under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771. The CVRA, enacted in 2004, permits either the victim or the Government to assert the victim's rights before the district court under § 3771(d)(1). Sevenson, however, does not pursue any claim under the CVRA in this appeal.

6

On May 23, 2011, the District Court conducted Stoerr's sentencing, during which it denied Sevenson's request for restitution. In declining to grant restitution to Sevenson, the District Court determined that Tierra, rather than Sevenson, was Stoerr's victim. Moreover, the District Court noted that "Sevenson has the opportunity to pursue a civil remedy here." (A. 201.)

The District Court sentenced Stoerr to a five-year period of probation and ordered restitution in the amount of $391,228.18, with $134,098.96 apportioned to the EPA and $257,129.22 apportioned to Tierra. The District Court's order provided that Stoerr was jointly and severally liable for $232,192.22 of the Tierra payment with his co-conspirator, Drimak, whom the District Court had previously ordered to pay $232,192.22 in restitution to Tierra. Because Stoerr lacked the financial ability to make the restitution payments in full, the District Court ordered him to pay $250 per month.

On June 22, 2011, the District Court ordered that Stoerr's obligation to pay Tierra $25,000 for the losses relating to the National Industrial and Boski scheme was satisfied because "Tierra . . . received full compensation" for its losses stemming from that scheme. (A. 173.) The District Court also ordered that Sevenson's $202,759.04 payment to Tierra counted towards Stoerr's $232,129.22 restitution obligation relating to Tierra's losses from the JMJ and Drimak scheme, and reduced Stoerr's remaining restitution obligation to Tierra to $29,370.18.

Sevenson moved for reconsideration of the District Court's restitution order, which the District Court denied. Sevenson then filed a notice of appeal. The Government

7

moved to dismiss Sevenson's appeal, arguing that Sevenson, as a non-party, is unable to appeal Stoerr's sentence. We referred the Government's motion to our merits panel and now consider the Government's motion together with the parties' merits briefs.

## II.

Sevenson contends that the District Court erred in failing to award it restitution in compensation for its payments to Tierra, because the MVRA requires district courts to order restitution to any entity that has compensated the crime victim. *See* 18 U.S.C. § 3664(j)(1) ("If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided . . . the compensation . . . ."). Although Sevenson acknowledges that it is not a party to Stoerr's criminal proceedings, it asserts that it nonetheless has a right to appeal the District Court's restitution order as a non-party payer of compensation to a victim under the MVRA.

The Government responds that Sevenson cannot appeal, because non-parties are unable to appeal a criminal defendant's final judgment and sentence. The Government also contends that the District Court did not abuse its discretion in ordering restitution payments to Tierra rather than to Sevenson, because district courts must fully compensate victims for their losses under § 3664(f)(1)(A), and because Stoerr is jointly and severally liable for the $232,192.22 restitution payment with Drimak. We will dismiss Sevenson's appeal, because Sevenson, as a non-party, lacks standing to appeal Stoerr's sentence.

A.

To have standing to appeal, the appellant "must be aggrieved by the order of the district court from which it seeks to appeal."[3] *IPSCO Steel (Ala.), Inc. v. Blaine Constr. Corp.*, 371 F.3d 150, 154 (3d Cir. 2004) (quoting *McLaughlin v. Pernsley*, 876 F.2d 308, 313 (3d Cir. 1989)) (internal quotation marks omitted). Ordinarily, only parties to a

---

[3] As the Supreme Court and our Court have emphasized, standing to appeal is a separate concept from standing under Article III of the Constitution. *See, e.g.*, *Devlin v. Scardelletti*, 536 U.S. 1, 6-7 (2002); *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333-34 (1980); *IPSCO Steel (Ala.), Inc. v. Blaine Constr. Corp.*, 371 F.3d 150, 154 (3d Cir. 2004). A party has Article III standing if it satisfies the "case-or-controversy" requirement, whereas a party has standing to appeal if it "is aggrieved" by the district court's order or judgment. *IPSCO Steel (Ala.), Inc.*, 371 F.3d at 154. Although we suggested in *McLaughlin v. Pernsley*, 876 F.2d 308, 313 (3d Cir. 1989), that the requirement that the appellant "be aggrieved by the" district court's decision "expresses the limitation imposed by Article III of the federal Constitution that one wishing to invoke the jurisdiction of a federal court have suffered an injury in fact," the Supreme Court explained in *Deposit Guaranty National Bank v. Roper* that standing to appeal is a "rule . . . of federal appellate practice . . . derived from the statutes granting appellate jurisdiction and the historic practices of the appellate courts." 445 U.S. at 333. The Supreme Court explicitly noted that "it does not have its source in the jurisdictional limitations of Art. III." *Id.* at 333-34.

proceeding adversely affected by the judgment entered in that proceeding are aggrieved by the judgment. *See Kaplan v. Rand*, 192 F.3d 60, 66-67 (2d Cir. 1999) ("[I]f not a party, the putative appellant is not concluded by a judgment, and is not therefore aggrieved by it.") (alteration and internal quotation marks omitted) (quoting *West v. Radio-Keith-Orpheum Corp.*, 70 F.2d 621, 624 (2d Cir. 1934)); *Sec. & Exch. Comm'n v. An-Car Oil Co.*, 604 F.2d 114, 119 (1st Cir. 1979) ("Ordinarily, only a person who was a party to the proceeding below and who is aggrieved by the judgment or order is entitled to appeal.") (citations omitted); *Burleson v. Coastal Recreation, Inc.*, 572 F.2d 509, 511 (5th Cir. 1978) (same). Accordingly, the Supreme Court and our Court have long recognized, as a general matter, that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (citations omitted); *see also Karcher v. May*, 484 U.S. 72, 77 (1987) ("[W]e have consistently applied the general rule that one who is not a party or has not been treated as a party to a judgment has no right to appeal therefrom.") (citations omitted); *In re Leaf Tobacco Bd. of Trade*, 222 U.S. 578, 581 (1911) ("One who is not a party to a record and judgment is not entitled to appeal therefrom.") (citations omitted); *IPSCO Steel* (*Ala.*), *Inc.*, 371 F.3d at 153 ("Ordinarily, only parties of record before the district court have standing to appeal.") (citing *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 836 (3d Cir. 1995)).

Sevenson does not contest the fact that it is not a party to Stoerr's criminal proceeding. Indeed, courts have recognized that "[n]otwithstanding the rights reflected in the restitution statutes, crime victims are not parties to a criminal sentencing proceeding." *Aguirre-Gonzalez*, 597 F.3d at 53

10

(citations omitted); *see also United States v. Grundhoefer*, 916 F.2d 788, 793 (2d Cir. 1990) (explaining that "[t]he victim[,] as a non-party[,]" has only limited rights under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663 *et seq.*). Sevenson claims entitlement to restitution, not as a victim, but as one who has reimbursed losses incurred by a victim of its former employee. If victims are non-parties to criminal proceedings, then Sevenson, who is a degree removed from victim status, is likewise a non-party. The presumptive rule, therefore, is that Sevenson cannot appeal. *See Aguirre-Gonzalez*, 597 F.3d at 53 ("[T]he baseline rule is that crime victims, as non-parties, may not appeal a defendant's criminal sentence.") (citations omitted).

We find no reason to disturb the presumptive rule in the context of a non-party payer's appeal of a restitution order. A restitution order is part of a defendant's sentence. *See United States v. Syme*, 276 F.3d 131, 159 (3d Cir. 2002) ("Restitution orders have long been treated as part of the sentence for the offense of conviction . . . .") (citations omitted). Thus, as the Tenth Circuit recognized, permitting a non-party to appeal a restitution order "would produce the extraordinary result of reopening [a criminal defendant's] sentence" for the benefit of a private party.[4] *United States v. Hunter*, 548 F.3d 1308, 1314 (10th Cir. 2008).

---

[4] Sevenson argues that permitting its appeal will not disturb Stoerr's final judgment and sentence, because it seeks only to "correct[] the payee" in the District Court's restitution order. (Appellant's Resp. in Opp'n to Mot. to Dismiss at 14.) Sevenson ignores, however, that it is asking us to alter the District Court's restitution award, which is part of Stoerr's sentence. *See United States v. Monzel*, 641 F.3d 528, 541

11

Neither our Court nor any other Court of Appeals has ever permitted this result. To the contrary, all Courts of Appeals to have addressed this issue have concluded that non-parties cannot directly appeal a restitution order entered against a criminal defendant. *See, e.g.*, *Aguirre-Gonzalez*, 597 F.3d at 54 ("[C]rime victims have no right to directly appeal a defendant's criminal sentence, under the CVRA or otherwise."); *Grundhoefer*, 916 F.2d at 793 (holding that a victim lacks standing to appeal a restitution order); *United States v. United Sec. Sav. Bank*, 394 F.3d 564, 567 (8th Cir. 2004) (holding that a crime victim lacks Article III standing to appeal under the MVRA); *United States v. Mindel*, 80 F.3d 394, 398 (9th Cir. 1996) ("[A crime victim] does not have standing under the VWPA to challenge the district court's order rescinding restitution payments."); *Hunter*, 548 F.3d at 1316 ("[N]either our case law nor the CVRA provide[s] for non-parties . . . to bring a post-judgment direct appeal in a criminal case."); *United States v. Johnson*, 983 F.2d 216, 217

---

(D.C. Cir. 2011) ("[The victim] is asking the court to revisit her restitution award, which *is* part of [the defendant's] sentence.") (citations omitted). Moreover, Sevenson has requested that we vacate the District Court's order determining that Stoerr's restitution obligations of $25,000 relating to the National Industrial and Boski scheme and $202,759.04 relating to the JMJ and Drimak scheme have been satisfied. Granting Sevenson's requested relief will thus result in a much larger criminal restitution judgment. Because granting Sevenson's requested relief will dramatically alter Stoerr's restitution obligations, we disagree that we can grant Sevenson's request without disturbing Stoerr's final judgment and sentence.

12

(11th Cir. 1993) (holding that the VWPA "does not afford a victim . . . standing to appeal the rescission of a restitution order"); *United States v. Monzel*, 641 F.3d 528, 544 (D.C. Cir. 2011) ("[W]e hold that [a non-party appellant] may not directly appeal her restitution award . . . .").

We agree that a non-party lacks standing to appeal a restitution order, because a non-party lacks "a 'judicially cognizable interest'" in a criminal defendant's sentence, and is thus not aggrieved by the defendant's sentence. *McLaughlin*, 876 F.2d at 313 (quoting *Diamond v. Charles*, 476 U.S. 54, 71 (1986)). Although a restitution order may resemble a civil judgment in the sense that it compensates a private party, it remains "criminal rather than civil in nature." *United States v. Leahy*, 438 F.3d 328, 335 (3d Cir. 2006) (en banc). Criminal punishment "is not operated primarily for the benefit of victims, but for the benefit of society as a whole." *Kelly v. Robinson*, 479 U.S. 36, 52 (1986). Therefore, regardless of the benefit that a restitution order may bestow on a private entity, restitution is largely "for the benefit of the State" rather than for the benefit of a private party.[5] *Id.* at 53

---

[5] Sevenson argues that our decision in *United States v. Kones*, 77 F.3d 66, 68 (3d Cir. 1996), requires us to conclude that non-parties have standing to appeal restitution orders, and that 28 U.S.C. § 1291 is a broad grant of jurisdiction over all final district court decisions. In *Kones*, a purported victim sought to appeal the district court's conclusion that she was not entitled to restitution because she was not a "victim" under the VWPA. 77 F.3d at 68. Without addressing the purported victim's standing to appeal, we noted in one sentence that we had appellate jurisdiction under 28 U.S.C. § 1291. *Id.* A "drive-by jurisdictional ruling[]," in which

(quotation marks omitted). Moreover, criminal prosecutions "place an individual citizen against the United States government." *Hunter*, 548 F.3d at 1312. Accordingly, even if a defendant's sentence affects other individuals, "[i]t is the defendant and he alone that suffers the direct consequences of a criminal conviction and sentence." *Grundhoefer*, 916 F.2d at 791.

Sevenson attempts to distinguish its appeal from the long line of precedent holding that a non-party lacks a judicially cognizable interest in a defendant's prosecution by arguing that the MVRA implies a right of appeal by non-party payers. Sevenson also asserts that we have recognized exceptions permitting interested non-parties to appeal, and that such an exception should be made here. We reject Sevenson's arguments in turn below.

B.

We first disagree that the MVRA's statutory scheme contains an implicit right of appeal by non-parties. Citing

jurisdiction "ha[s] been assumed by the parties, and . . . assumed without discussion by the [c]ourt," does not create binding precedent. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) (citations omitted). We therefore are not bound by the bald jurisdictional statement in *Kones*. Moreover, 28 U.S.C. § 1291's broad jurisdictional grant does not permit us to ignore the requirement that the appellant have standing to appeal. *See United States v. Hunter*, 548 F.3d 1308, 1312 (10th Cir. 2008) ("[T]he issues of jurisdiction under § 1291 and non-party appellate rights are distinct.").

*United States v. Diaz*, 245 F.3d 294, 312 (3d Cir. 2001), Sevenson contends that allowing standing here will further the purpose of the MVRA. In *Diaz*, we recognized that "[t]he purpose of restitution under the MVRA is to compensate the victim for its losses and, to the extent possible, to make the victim whole." *Id.* (citing *United States v. Kress*, 944 F.2d 155, 159-60 (3d Cir. 1991)). The MVRA's statutory scheme, in Sevenson's view, encourages third-parties to compensate victims voluntarily by mandating reimbursement to the payer. *See* § 3664(j)(1) ("If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation . . . ."). Because "preclud[ing] a pay[e]r from vindicating her right[] [to reimbursement] through the appellate process will . . . discourage or even deter would-be pay[e]rs from making victims whole," Sevenson urges us to hold that the MVRA's statutory scheme contains an implied right of appeal by non-party payers. (Appellant's Resp. in Opp'n to Mot. to Dismiss at 10.)

Although we appreciate that conferring non-party payers with appellate rights may encourage third-parties to compensate victims voluntarily, we cannot conclude that the MVRA implies a right of appeal by non-parties. First, the MVRA gives no indication that it disturbs the default rule that only the Government and the defendant can appeal a defendant's sentence. Instead, as the Government explains, § 3664(o)(1)(B) notes that a restitution order can be "appealed and modified" pursuant to 18 U.S.C. § 3742. Section 3742 permits appeals by the defendant and by the Government, but does not purport to allow appeals by non-parties. Because "[i]t is not the province of a federal court to confer rights

15

where statutory language is silent," *Am. Trucking Ass'ns v. Del. River Joint Toll Bridge Comm'n*, 458 F.3d 291, 303 (3d Cir. 2006) (citing *California v. Sierra Club*, 451 U.S. 287, 297 (1981)), the MVRA's omission of any language recognizing non-party appellate rights counsels against permitting non-party appeals.

Moreover, we are especially hesitant to find an implied right of appeal by non-party payers under the MVRA, because Congress explicitly granted victims the right to petition the court of appeals for a writ of mandamus under the CVRA, but did not grant non-party payers an analogous means to obtain court of appeals review under the MVRA. *See* § 3771(d)(3) (permitting victims to petition for a writ of mandamus under the CVRA).[6] Congress's decision to permit

---

[6] Specifically, § 3771(d)(1) of the CVRA provides that "[t]he crime victim or the crime victim's lawful representative, and the attorney for the Government[,] may assert the rights" under the CVRA. Section 3771(d)(3) explains that CVRA "rights . . . shall be asserted in the district court," and "[i]f the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus." As other courts have agreed, the CVRA thus allows victims to petition for a writ of mandamus. *See, e.g.*, *United States v. Aguirre-Gonzalez*, 597 F.3d 46, 54 (1st Cir. 2010) ("[T]he CVRA expressly provides crime victims with a limited avenue to challenge the restitution component of a defendant's sentence through a petition for a writ of mandamus . . . .") (citations omitted); *Monzel*, 641 F.3d at 540 ("Since the enactment of the CVRA, every circuit to consider the question has held that mandamus is a crime victim's only recourse for challenging a restitution order.").

victims to seek mandamus review under the CVRA, but to refrain from including a similar provision for non-party payers under either the MVRA or the CVRA, suggests that Congress did not intend to permit appeals by non-party payers.

Finally, the MVRA's statutory scheme indicates that Congress intended for the Government, rather than for payers and victims, to be primarily responsible for ensuring proper restitution payments. For example, the MVRA provides that "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the *attorney for the Government*," § 3664(e) (emphasis added), and that "[a]n order of restitution may be enforced by the *United States* in the manner provided for in . . . [18 U.S.C. §§ 3571 *et seq.* and 3611 *et seq.*]; or . . . by all other available and reasonable means." § 3664(m)(1)(A)(i)-(ii) (emphasis added). A victim's role, by contrast, is limited to conferring with the Government "to the extent practicable" regarding the amounts of restitution, § 3664(d)(1); submitting information to the probation officer regarding his or her losses; § 3664(d)(2)(A)(iii), (vi); petitioning the district court for an amended restitution award if he or she discovers further losses, § 3664(d)(5); moving for an adjustment of the defendant's payment schedule if the defendant's economic circumstances change, § 3664(k); and obtaining "an abstract of judgment certifying that a judgment has been entered in" his or her favor. § 3664(m)(1)(B). Because the MVRA's statutory scheme assigns to the Government the primary responsibility for ensuring proper restitution orders, we cannot infer from the MVRA that Congress intended to permit non-party payers to appeal purportedly improper restitution orders. *See Transamerica Mortg. Advisors, Inc. v.*

17

*Lewis*, 444 U.S. 11, 19 (1979) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").

We acknowledge, as Sevenson emphasizes, that the Sixth Circuit held in *United States v. Perry*, 360 F.3d 519, 524 (6th Cir. 2004), that a victim has standing under the MVRA to appeal a district court's order vacating a lien that the victim obtained under § 3664(m)(1)(B) against a criminal defendant's property to collect court-ordered restitution. We disagree, however, that *Perry* demonstrates that a non-party payer can appeal a criminal defendant's sentence. In *Perry*, the Sixth Circuit reasoned that the MVRA permits a victim to obtain a lien to ensure that the defendant satisfies his or her restitution obligation. *Id.* A lien under the MVRA is "a lien on the property of the defendant located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State." *Id.* at 525 (quoting § 3664(m)(1)(B)). In the state where defendant Perry's property was located, a lien gave rise to a property interest for the victim. *Id.* Because the lien created a property interest, the victim was entitled to due process before the district court vacated the lien. *Id.* at 525-26. Out of concern that declining to hear the appeal would result in a deprivation of the victim's property without due process, the Sixth Circuit determined that the victim had standing under the MVRA. *Id.* at 526.

Sevenson, by contrast, cannot present the due process issue that the Sixth Circuit confronted in *Perry*, because it does not have a cognizable property interest created by state law. We therefore do not face the constitutional concern that encouraged the Sixth Circuit to find that a victim has standing

to appeal a district court's order vacating a lien entered pursuant to § 3664(m)(1)(B). Moreover, as the Government emphasizes, the victim in *Perry* did not request that Perry's final sentence be reopened. We, by contrast, cannot review the District Court's restitution order without reopening Stoerr's sentence. *Perry* thus does not persuade us that the MVRA affords standing to appeal to non-parties.[7]

---

[7] Sevenson also cites to a letter from Senator Jon Kyl to Attorney General Eric Holder, in which Senator Kyl states that "when Congress passed the CVRA, the federal courts of appeals had recognized that crime victims could take ordinary appeals to protect their rights." Letter from Senator Jon Kyl to Attorney Gen. Eric Holder (June 6, 2011), *reprinted in* 157 Cong. Rec. S3608 (daily ed. June 8, 2011). In support of Senator Kyl's argument that victims were able to appeal to protect their rights at the time of the CVRA's passage, the letter cites to our decision in *Kones*, 77 F.3d 66 and to *Doe v. United States*, 666 F.2d 43, 46 (4th Cir. 1981), an appeal by a rape victim of a district court's pre-trial ruling relating to the admissibility of the victim's past sexual behavior and reputation at trial. *Id.* The letter continues that "Congress sought to leave these protections in place, while expanding them to ensure that crime victims could obtain quick vindication of their rights in appellate courts" through the CVRA's mandamus provision in § 3771(d)(3). *Id.* Senator Kyl's letter, however, does not persuade us that non-parties have a right to appeal under the MVRA, because the letter concerns the CVRA rather than the MVRA. Additionally, a statement by an individual senator does not "amend the clear and unambiguous language of a statute," *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 457 (2002), especially when the senator's statement follows long after the statute's enactment.

19

C.

Next, Sevenson contends that the Supreme Court and our Court have recognized exceptions to the rule against non-party appeals where the non-party has a pecuniary interest in the dispute. *See, e.g.*, *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002) ("We hold that nonnamed class members . . . who have objected in a timely manner to approval of the settlement . . . have the power to bring an appeal without first intervening."); *Caplan*, 68 F.3d at 836 (holding in the civil context that a non-party with "a stake in the outcome of the district court proceedings" may sometimes appeal) (citing *Binker v. Pennsylvania*, 977 F.2d 738, 745 (3d Cir. 1992)). Because, in Sevenson's view, it has an interest in restitution under § 3664(j)(1), it asserts that it can appeal the District Court's restitution order as an interested non-party.

As an initial matter, as Sevenson acknowledges, courts have allowed interested non-parties to appeal in primarily civil, rather than criminal, matters. *See, e.g.*, *Devlin*, 536 U.S. at 14 (permitting unnamed class members to appeal); *Caplan*, 68 F.3d at 836 (holding in the civil context that certain non-parties have a right to appeal); *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 349 (3d Cir. 1999) (holding in the civil context that a non-party with "a stake in the outcome of the proceedings that is discernible from the record" can sometimes appeal) (citing *Caplan*, 68 F.3d at 836). Sevenson cites to no precedent in which the Supreme

*See Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1081 (2011) ("Post-enactment legislative history . . . is not a legitimate tool of statutory interpretation.") (citations omitted).

Court or our Court has allowed an exception to the rule against non-party appeals in the context of a final criminal judgment.[8]

---

[8] Sevenson argues that we may consider its appeal to be civil based on *United States v. Lavin*, 942 F.2d 177, 182 (3d Cir. 1991), where we held that an appeal of a district court order rejecting a third-party's purported interest in forfeited property was a civil matter, even though the district court entered the initial forfeiture order as part of a criminal defendant's sentence. We do not agree that Sevenson's appeal is civil in nature. First, our Court has already concluded "that restitution ordered as part of a criminal sentence is criminal rather than civil in nature." *United States v. Leahy*, 438 F.3d 328, 335 (3d Cir. 2006) (en banc). Moreover, in *Lavin*, we reasoned that the appeal was civil in nature because "a hearing to adjudicate the validity of a third-party's interest in forfeited property is not a criminal *prosecution*, i.e., an action commenced by the government to secure a sentence of conviction for criminal conduct." 942 F.2d at 182. In particular, we explained that because the defendant had already forfeited the disputed property, reviewing the district court's rejection of the third-party's interest in the property would not affect the criminal defendant's rights. *Id.* Sevenson's request, by contrast, will substantively affect Stoerr's rights, because, as explained in note 4 *supra*, Sevenson asks us to vacate the District Court's order determining that all but $29,370.18 of Stoerr's restitution obligation has been satisfied. Accordingly, because Sevenson asks us to materially alter Stoerr's sentence, its appeal is not civil.

Assuming that the exceptions permitting certain interested non-parties to appeal apply in the criminal context, none of our recognized exceptions permits Sevenson's appeal. Our primary exception, known as the *Binker* exception, permits non-party appeals when "(1) the nonparty has a stake in the outcome of the proceedings that is discernible from the record; (2) the nonparty has participated in the proceedings before the district court; and (3) the equities favor the appeal." *Northview Motors, Inc.*, 186 F.3d at 349 (citing *Caplan*, 68 F.3d at 836). As we explained in Section II(A) *supra*, a non-party does not have a judicially cognizable stake in a criminal defendant's sentence. Sevenson therefore cannot satisfy the first prong of the *Binker* exception, and thus cannot establish entitlement to appeal as an interested non-party.

III.

Because Sevenson does not have standing to appeal Stoerr's sentence, we will grant the Government's motion to dismiss.[9]

---

[9] Because Sevenson lacks standing to appeal, we do not reach the question of whether the District Court abused its discretion in failing to award restitution to Sevenson.