IN RE: Douglas A. GROOMS, Debtor

Joseph B. Spero, Trustee, Plaintiff

v.

Community Chevrolet, Inc., Defendant

Case No. 16–10030–TPA
Adv. No. 16–1041–TPA

United States Bankruptcy Court,
W.D. Pennsylvania.

Signed December 20, 2016

John C. Melaragno, Esquire, Erie, PA, for Plaintiff.

John E. Nagurney, Attorney Nagurney Cottage, Conneaut Lake, PA, for Defendant.

## MEMORANDUM ORDER

Thomas P. Agresti, Judge, United States Bankruptcy Court

Before the Court for consideration is the ***Motion of the United States of America to Intervene*** ("Motion to Intervene") filed at Doc. No. 14. The Plaintiff, Joseph B. Spero, Chapter 7 Trustee ("Trustee"), has filed an Objection opposing the *Motion to Intervene* at Doc. No. 15. The Defendant, Community Chevrolet, Inc. ("Community") has not taken a position. Also to be decided is a ***Motion to Withdraw United States' Answer to Complaint*** ("Motion to Withdraw") filed at Doc. No. 13.[1] For the reasons explained below, both the *Motion to Intervene* and the *Motion to Withdraw* will be granted. Additionally, the Court will temporarily stay the pretrial schedule that was previously ordered to allow the United States of America ("U.S.") time to file its answer to the complaint and to

---

1. The U.S. originally filed an answer to the complaint without first seeking leave to intervene, *see* Doc. No. 12. After the Court pointed out that as a non-party the U.S. could not do so, the *Motion to Withdraw* and *Motion to Intervene* were filed.

advise whether it wishes to conduct any discovery.

The factual scenario underlying this Adversary Proceeding and the *Motion to Intervene* is fairly simple for present purposes. In late 2015 the Debtor was charged with the federal crime of wire fraud in connection with an embezzlement scheme he was engaged in between 2008 and 2013. That scheme involved the Debtor, in his former capacity as a manager and employee of Community, causing phony advertising invoices totaling almost half a million dollars to be unwittingly paid by Community, to the ultimate benefit of the Debtor. In other words, Community was a victim of the Debtor's criminal conduct. The Debtor reached a plea agreement with the U.S. which included as a condition that the Debtor would make full restitution to Community, and that $100,000 of that restitution would be paid in advance of his sentencing.

The Debtor made the $100,000 payment to Community in or about November 2015 and then filed this bankruptcy case on January 15, 2016. Pursuant to the plea agreement, the Debtor pleaded guilty to the crime of wire fraud on February 29, 2016. The Debtor was subsequently sentenced by the District Court in a criminal judgment order on July 18, 2016, that includes a restitution provision of $485,800.[2] The criminal judgment order also indicates that the 24–month sentence imposed on the Debtor was below the sentencing guideline range based on the plea agreement. In this adversary proceeding the Trustee is seeking to avoid the $100,000 payment from the Debtor to Community on the grounds that it was a preferential transfer under *11 U.S.C. § 547.*

The U.S. has moved to intervene in the case pursuant to *Fed.R.Bankr.P. 7024* and *Fed.R.Civ.P. 24.* More specifically, the U.S. asserts that intervention should be granted as a matter of right under *Fed. R.Civ.P. 24(a)(2)*, or in the alternative permissively under *Fed.R.Civ.P. 24(b)(1)(B)* or *24(b)(2)*. The Court will briefly look at both of these grounds for intervention.

### INTERVENTION OF RIGHT

Intervention by right in this proceeding is governed by the following standard:

> (a) **Intervention of Right**. On timely motion, the court must permit anyone to intervene who:
>
> . . .
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

*Fed.R.Civ.P. 24(a)(2).* An applicant for intervention by right is required to show: (1) a timely application for intervention; (2) a sufficient interest in the litigation; (3) a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and, (4) inadequate representation of the applicant's interest by existing parties to the litigation. *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998). The Court will examine each of these elements.

### (1) Timeliness

Timeliness in this context is a flexible concept, with the *Rule* providing no hard and fast deadline for a would-be

---

**2.** A copy of the criminal judgment order is attached to the proof of claim filed by the U.S.

*See,* Proof of Claim 16–1.

intervenor to act. Trial courts are to exercise their sound discretion in determining whether a motion to intervene is timely, though the Third Circuit has provided some guidance by identifying three factors that should be considered in making the determination. Those factors are how far the proceeding has gone when the motion to intervene is filed, the prejudice that delay may cause the parties, and the reason for the delay. *See, Mountain Top Condo. Ass'n. v. Dave Stabbert Master Builder, Inc.,* 72 F.3d 361, 369 (3d Cir. 1995).

■ The Court has little difficulty concluding that the *Motion to Intervene* in this case was timely. It was filed on October 5, 2016, only 6 days after Community filed its answer.[3] The initial pretrial conference in the case had not yet occurred and a pretrial scheduling order had not yet been entered. In other words, the case was in its very initial stage when the *Motion to Intervene* was filed. The Trustee has not identified any unfair prejudice from delay that would result if intervention is granted, nor does the Court itself perceive any. There are a number of other pending matters in this bankruptcy which are unlikely to be concluded before the present adversary proceeding is resolved, even with the intervention of the U.S.

As to the reason for any "delay" by the U.S., as indicated above there was actually very little delay involved in what the U.S. did, with the *Motion to Intervene* having been filed even prior to the first pretrial conference. While the grant of the *Motion to Intervene* will entail some delay in that the Court is going to concomitantly stay the pretrial schedule in this case, the reason for that stay cannot be laid at the feet of the U.S. Furthermore, the overall delay caused will be minimal because the Court will keep the case moving quickly and will strictly limit any additional time for discovery that may be granted.

### (2) Sufficient Interest

The next element looks at whether the U.S has a sufficient interest in the litigation to justify intervention. The *Kleissier* court referred to this inquiry as involving a "nebulous" standard which reflects the "elasticity" and "pragmatism" embodied in *Rule 24(a)(2)*. 157 F.3d at 970. The U.S. contends that it has a significant protectable interest in the matter because it is charged with enforcing criminal restitution orders, while the Trustee disputes the sufficiency of the U.S.'s interest, arguing that the recovery of the $100,000 as a preference would not impair the ability of the U.S. to enforce the criminal judgment order, and that the U.S.'s status as a potential unsecured creditor is insufficient to allow intervention.

Put somewhat differently, the U.S. seems to argue that its role as enforcer of the criminal restitution system is enough in itself to give it a right to intervene, while the Trustee asserts that the U.S. has no direct economic interest in the outcome of the case and argues that it therefore lacks a significant protectable interest as contemplated by *Rule 24(a)(2)*. The Court is more persuaded by the argument of the U.S. on this point as the pertinent case law stands for the proposition that the "interest" necessary for intervention is not strictly limited to economic considerations, and in the particular instance of governmental intervenors can include the interest involved in carrying out public policy.

For instance, in *Doe v. Allentown School District,* 2009 WL 2058726 (E.D. Pa. July 10, 2009) four minor plaintiffs were stu-

---

**3.** Indeed, if the answer originally filed by the U.S. that is now the subject of the *Motion to Withdraw* is viewed as the starting point of its effort to intervene, that pushes the time back to only a single day after the filing of Community's answer.

dents of the defendant school district who were subjected to sexual assaults by another student. They brought Section 1983 and Title IX claims against the school district for failing to adequately protect them from the assaults. The U.S. sought to intervene on the grounds that it had a direct and substantial interest in ensuring that recipients of federal aid, such as the school district, do not discriminate on the basis of sex in violation of Title IX, that it plays a substantial role in the enforcement of Title IX, and that it has a substantial interest in ensuring that its enforcement of Title IX in subsequent matters was not undermined by an adverse precedent in the case. The *Doe* court found that the U.S. did have a sufficient interest to allow intervention of right. *See also, e.g., Roeder v. Islamic Republic of Iran,* 195 F.Supp.2d 140 (D.D.C. 2002), aff'd., 333 F.3d 228 (D.C. Cir. 2003) (U.S. had sufficient interest based on adherence to its international commitments to intervene as a matter of right in action seeking damages from Iran arising out of hostage seizure: "Intervention is not limited under Rule 24(a) to those who may be sued by plaintiff … courts often allow the United States to intervene in cases that implicate its interest but pose no threat of liability").

■ In the present case the Court finds that the U.S. does have a strong interest in ensuring that victims of federal crimes obtain restitution as may be provided to them by law, and by voluntary plea agreements entered into by criminal defendants and federal prosecutors. The strong federal policy in this regard is demonstrated by the *Mandatory Victims Restitution Act* ("MVRA"), *18 U.S.C. § 3663A,* which, as its name indicates, makes victim restitution a required feature of sentencing in certain federal crimes. *See also, e.g., U.S. v. Novak,* 476 F.3d 1041, 1043 (9th Cir. 2007) (*MVRA* rests on the principle

that "[I]t is essential that the criminal justice system recognizes the impact that crime has on the victim, and to the extent possible ensures that the offender be held accountable to repay these costs," quoting S. Rep. No. 104–179 (1995)). The *MVRA* also applies in connection with plea agreements. *§ 363A(c)(1).* The U.S. is charged with the enforcement of restitution orders that are issued pursuant to the *MVRA. See, 18 U.S.C. §§ 3664(m)(1)(A), 3613(a),* and *3574.* The U.S. thus has a sufficient interest to intervene based on its role in carrying out the public policy of crime victim restitution.

### (3) Impairment of Interest

■ In order to establish this element the U.S. must demonstrate a tangible threat to its legal interest. In other words, it must demonstrate that its interest "might become affected or impaired, as a practical matter, by the disposition of the action in its absence." *Mountain Twp.,* 72 F.3d at 368. The U.S. has made such a showing.

If the Trustee is successful in this case and the $100,000 payment that the Debtor made to Community is avoided as a preference, it will mean that at least one component of the plea agreement and the resulting criminal judgment order will as a practical matter have been thwarted, *i.e.,* the requirement that the Debtor make partial restitution to Community prior to his sentencing. While the Court has been presented with no evidence to show why this requirement was included in the plea agreement, it seems self-evident that because the future is always uncertain the U.S. wanted to ensure that, no matter what might subsequently happen, Community would receive at the very least a partial restitution. It also appears that the district court's sentencing of the Debtor, with its reduced prison time, was premised

on the understanding that the crime victim had already been partially compensated for its loss. The Trustee's contention that the outcome of the case will not impair the ability of the U.S. to enforce restitution completely ignores the potential impact this case could have on that aspect of the plea agreement/criminal judgment order.

### (4) Adequacy of Representation of U.S. Interest by Existing Parties

Finally, the U.S. must show that its interest in the outcome of this matter will not be adequately represented by Community if the U.S. is not permitted to intervene. The U.S. is only required to show that such vicarious representation "may be" inadequate, and the burden to be met in that regard is described as "minimal." *Id.* A prospective intervenor's rights are not adequately represented where: (1) the interest of the applicant so diverges from the representative party that the representative party cannot devote proper attention to the applicant's interest; or, (2) or there is collusion between the existing parties; or, (3) the representative party is not diligently prosecuting or defending the suit. *See, United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1185 n. 18 (3d Cir. 1994).

In the present case there has been no allegation of collusion between the Trustee and Community, nor is there any suggestion that Community is not diligently defending its position, so the focus is on the divergence of interest between the U.S. and Community. Such divergence is clear. Community has an interest in retaining the $100,000 which it received from the Debtor as partial compensation for the loss it suffered due to the Debtor's fraud, but no broader public policy interest beyond that. By contrast, while the U.S. would presumably also like to see Community keep the disputed payment, its interest goes beyond that specific result in this case to encompass the affect an adverse result in the case could have in other federal criminal proceedings. Thus, for example, whereas Community might be willing to enter into a compromise with the Trustee to settle the case, resulting in a partial avoidance of the payment, the U.S. might be less inclined to do so for fear of the consequences it could have in future cases.

Put another way, Community has an individual interest whereas the U.S. has a systemic one that looks at the bigger picture. This distinction between the interests of a crime victim and of the U.S. as criminal prosecutor is recognized in the criminal law. *See, e.g., U.S. v. Stoerr*, 695 F.3d 271 (3d Cir. 2012) wherein the court held that the criminal defendant's employer, which was the victim of his crime, did not have standing to appeal the restitution order that was entered as part of his sentence. The *Stoerr* court observed that "a nonparty lacks standing to appeal a restitution order, because a non-party lacks 'a judicially cognizable interest' in a criminal defendant's sentence, and is thus not aggrieved by the defendant's sentence." *Id.* at 277 (citations omitted). Here, the interests of the U.S. and Community clearly diverge to the extent that Community cannot adequately represent the full interests of the U.S. in this adversary proceeding.

### PERMISSIVE INTERVENTION

Having found that the U.S. has a right to intervene pursuant to *Fed.R.Bankr.P. 24(a)(2)*, the Court need not, strictly speaking, consider the alternative of permissive intervention. Nevertheless, it will proceed to briefly do so.

The U.S. invokes permissive intervention under either *Fed.R.Civ.P. 24(b)(1)(B)* or *24(b)(2)* as an alternative basis for the grant of the *Motion to Intervene*. Those provisions state:

(b) **Permissive Intervention.**

(1) **In General.** On timely motion, the court may permit anyone to intervene who:

. . .

(B) has a claim or defense that shares with the main action a common question of law or fact.

(2) **By a Government Officer or Agency.** On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

(A) a statute or executive order administered by the officer or agency; or

(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

*Id.* Although the U.S. invokes both provisions, the Court finds that governmental intervention under *Rule 24(b)(2)* is most appropriately applied here. That *Rule* "requires that intervention be granted liberally to governmental agencies because they purport to speak for the public interest." *Amalgamated Transit Union, Local 1729 v. First Group America, Inc.*, 2016 WL 520989 *2 (W.D. Pa., February 10, 2016) (quoting *Security National Ins. Co. v. Amchin*, 309 F.R.D. 217, 222 (E.D. Pa. 2015)). In this case, Community's defense is based on the criminal judgment order and the *MVRA. See*, Defendant's Answer at ¶¶ 9–11, Doc. No. 9. The Court finds that *MVRA* is "administered" by the U.S, and that the criminal judgment order was issued or made at least in part under the *MVRA.* Thus, even if the U.S. did not meet the requirements for intervention by right, the Court would grant it permission to intervene pursuant to *Fed.R.Civ.P. 24(b)(2).*

**AND NOW**, this *20*th day of *December, 2016*, it is **ORDERED, ADJUDGED** and **DECREED** that,

(1) The *Motion to Intervene* is **GRANTED** and in all future filings in this case the U.S. shall be included as a defendant in the caption. The Clerk is directed to immediately amend the caption of the within Adversary to include "United States of America" as a Party Defendant.

(2) The *Motion to Withdraw* is **GRANTED** and the *Answer* filed by the U.S. at Doc. No. 12 is deemed **WITHDRAWN.**

(3) *On or before December 27, 2016,* the U.S. shall file its *Answer* to the *Complaint.*

(4) The *Pretrial Scheduling Order and 7016(f) Notice* issued on October 13, 2016 at Doc. No. 18 is **STAYED** pending further order except as otherwise specifically provided herein.

(5) *On or before December 27, 2016,* the U.S., if so interested, shall file a *Motion* requesting the ability to conduct discovery in the case, and if so, the amount of time it requests for discovery.

(6) Upon receipt and review of the *Motion* to be filed by the U.S. pursuant to Paragraph 5, above, the Court will issue a further order. If any additional time for discovery is to be granted, the Court anticipates that such will be for discovery by the U.S. only.

(7) The current deadline of December 19, 2016, for the original Parties to file preliminary and dispositive motions as set forth in the *Pretrial Scheduling Order and 7016(f) Notice* is not stayed pursuant to Paragraph 4 and remains in effect, subject to possible reconsideration at the time of issuing the Order referenced in Paragraph 8, below.

(8) The Court understands that the Trustee has filed a *Motion for Summary*

*Judgment* along with a supporting brief and it would normally issue a scheduling order in response, however it will delay doing so at this time until the U.S. files its *Motion* pursuant to Paragraph 5, above. Scheduling of the *Motion for Summary Judgment* will be addressed in the order to be entered following receipt of such *Motion*.